## UNITED STATES DISTRICT COURT
### for
## THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **PAUL E. NUNU,** | § | |
| **Plaintiff** | § | |
| **vs.** | § | CIVIL ACTION NO. 4:21-cv-_____ |
| **THE STATE OF TEXAS through its** | § | |
| **ATTORNEY GENERAL HON. KEN PAXTON,** | § | |
| **THE HONORABLE MICHEAL B. NEWMAN,** | § | **VERIFIED COMPLAINT** |
| **THE HONORABLE JASON A. COX,** | § | |
| **CHARLES L. NUNU, and NANCY NUNU RISK** | § | |
| **Defendants** | § | |

### Original Complaint Challenging the
### Constitutionality of Texas Vexatious Litigant Statutes

Out of Docket No. 416,781, in the Statutory Probate Court No. Two (2) of
Harris County, Texas, Hon. Michael B. Newman, Presiding

To the Honorable Judges of the Southern District Of Texas, Houston Division:

Respectfully submitted,

*/S/  Donald T. Cheatham*
**Donald T. Cheatham**
Texas Bar Number 24029925
SDTX: 32456
9801 Westheimer Road, Suite 600
Houston, Texas 77042
(713) 337-0155 Telephone
(713)400-7696 Telecopier
email: cheathamlaw@aol.com
ATTORNEY FOR PLAINTIFF

1

## List of Interested Persons

The following listed persons and their counsel are all known persons or entities who have an interest in the outcome of this case:

**Plaintiff:**   **Paul E. Nunu**
**c/o Donald T. Cheatham**
9801 Westheimer Road, Suite 600
Houston, Texas 77042
(713) 337-0155 Telephone
(713)400-7696 Telecopier
email: cheathamlaw@aol.com

**Defendants:**  **The STATE OF TEXAS through its**
**Texas Attorney General:**
**c/o The Honorable Ken Paxton**
300 W. 15th Street, Austin, TX 78701
PO Box 12548, Austin, TX 78711-2548
(512) 463-2100
Email: const_claims@texasattorneygeneral.gov

**The Honorable Michael B. Newman**
**The Honorable Jason A. Cox**
**c/o Christian D. Menefee, Harris County Attorney**
**c/o Seth Hopkins, Assistant County Attorney**
1019 Congress Plaza, 15th Floor
Houston, Texas 77002
(713) 274-5141
email: Seth.Hopkins@cao.hctx.net

**Charles L. Nunu**
**Nancy Nunu Risk**
**c/o W. Cameron McCulloch**
2900 Weslayan, Suite 150
Houston, Texas 77027
(713) 572-2900
(713) 572-2902 Fax
email: Cameron.Mcculloch@mmlawtexas.com

# Table of Contents

List of Parties and Counsel ............................................................................. -2-

Table of Contents .......................................................................................... -3-

Appendix ....................................................................................................... -4-

Table of Authorities ...................................................................................... -5-

Questions and Issues Presented: ................................................................... -7-

Unconstitutional Statutes: .............................................................................. -8-

Introduction .................................................................................................... -10-

Jurisdiction and Venue .................................................................................. -12-

Parties ........................................................................................................... -12-

Background ..................................................................................................... -14-

Statement of Facts ......................................................................................... -17-

The Probate Conflict ...................................................................................... -18-

Unconstitutional State Actions ..................................................................... -23-

Guaranteed Constitutional Freedoms .......................................................... -27-

Reasons to Grant Relief ................................................................................. -33-

Argument ........................................................................................................ -36-

History of the Right to Petition and for Unfettered Court Access……. ............. -42-

The First Amendment Freedom to Petition ................................................... -44-

The Vexatious Litigant Statutes are Unconstitutional ................................... -52-

Conclusion ..................................................................................................... -58-

Prayer ……………………………………………………………………………-59-

Signature of Counsel ……………………………………………………………-60-

Certificate of Service ..................................................................................... -60-

# APPENDIX

1. Texas Vexatious Litigant Statutes:  Texas Civil Practice & Remedies Code Chapter 11 §§ 11.001 through 11.104;

2. 30th January 2018 Vexatious Litigant Order and prefiling permanent injunction;

3. 15 January 2019 Texas 14th Court of Appeals Opinion;

4. 31 January 2019 Administrative Order denying pre-filing permission to appeal;

5. 31 January 2019 Notice of Appeal;

6. 1 Feb 2019 County Clerk Letter acknowledging representation by counsel;

7. 1 Feb 2019 14th Court of Appeals letters acknowledging representation by counsel;

8. 14 March 2019 14th Court of Appeals Order granting extension of time to file notice of appeal;

9. 24 April 2019 Order Striking Notice of Appeal with Vexatious Litigant Order and prefiling permanent injunction;.

10. 24 April 2019 Order Granting Motion for Release of Surety Bond awarding attorney's fees.

11. 20 June 2019 14th Court of Appeals Memorandum Opinion dismissing appeal;

12. 22 October 2020 14th Court of Appeals Opinion refusing constitutional challenge to Vexatious Litigant Statutes;

13. 15 December 2020 14th Court of Appeals order denying *EnBanc* Rehearing;

14. 15 December 2020 14th Court of Appeals order striking pleadings;

15. Challenge to the Constitutionality of a State Statute Form;

16. 31 May 2019 Order denying TCPA Motion to Dismiss awarding attorney's fees in the event of an appeal;

17. Probated Will and Final Judgment admitting Will to Probate;

18. Reporters Record of 15 December 2016 Hearing on Dependent Administration;

19. 12 January 2017 Order Creating Dependent Administration and 2 Orders Denying Accounting;

20. 27 October 2017 Offending Instrument with Raymond Risk Memorandum attached;

21. 4 January 2018 Reporters Record of Vexatious Litigant Hearing;

22. 22 March 2018 Reporters Record of Third Motion to Compel Distribution;

23. 7 April 2018 Reporters Record Excerpt;

24. List of 330 United States/Texas citizens declared "Vexatious Litigants";

25. Hon. Loyd Wright Campaign contributors.

## TABLE OF AUTHORITIES

### Supreme Court of the United States

*Armstrong v. Exceptional Child Center, Inc., Et Al*, 135 S.Ct. 1378, 1383 (2015)...........-43-
*Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 741 (1983),.............-44,46,48,49-
*BE&K Construction Company v. NLRB,* 536 U.S. 516, 524 (2002).......................-44,48–
*Borough of Duryea, Pennsylvania V. Guarnieri*, 564 U.S. 379, 388 (2011)..........- 35,44,50-
*Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978)......................................................-7-
*California Motor Transport v. Trucking Unlimited,* 404 U.S. 508 (1972) ...............-44,46-
*Chambers v. Baltimore and Ohio Railroad Company,* 207 U.S. 142, 148 (1907).......-35,44-
*Citizens United v. Federal Election Commission,* 558 U.S. 310, (US 2010)...............-7,39-
*Ex parte Siebold*, 100 U.S. 371, 376 (1879). ..........................................................-11-
*Fairbank v. United States*,181 U.S. 283, 286 (1901) ..............................................-11-
*Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428, (1982): .............. . . . . . ... . ...-36,40-
*Marbury v. Madison*, 5 U.S.137,180(1803) ..........................................................-11-
*Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980); ..............................................-24-
*Maryland v. Louisiana*, 451 U.S. 725, 746, (1981). .........................................-..-35-
*Mine Workers v. Illinois Bar Assn.,* 389 U.S. 217, 222 (US 1967)................................-44-
*Miranda v. Arizona*, 384 U.S. 436, 491 (1966). ....................................................-11-
*McDonald v. Smith* 472 U.S. 479, 482 1985)................................................-44,47-
*Norton v. Shelby County*, 118 U.S. 425, 442 (1886). ..............................................-11-
*Perez v. Mortgage Bankers*, 575 U.S. 92, 101 (2015). ...........................................-11-
*Reynoldsville Casket v. Hyde*, 514 U.S. 749, 760 (1995) ..........................................-11-
*Sure-Tan, Inc. v. NLRB*, 467 U.S. 883, 896-897,(1984);.........................................-50-
*Thomas v. Collins*, 323 U.S. 516, 530 (1945)..........................................-44,55-
*United States v. Cruikshank*, 92 U.S. 542, 552 (US 1876). .........................................-47-
*United States v. Goodwin* 457 U.S. 368, 372 (1982)...........................................-7,33-

### United States Court of Appeals for the Fifth Circuit

*Crowder v. Sinyard,* 884 F.2d 804, (5th Cir.1989) ...........................................-48-
*Jackson v. Procunier*, 789 F.2d 307, (CA5 1986) .............................................-35,37,47-
*Ryland v. Shapiro*  708 F.2d 967, (5th Cir.1983) ................................................-46,48-
*United States V. Dvorin*, 817 F.3d 438, 455 (5th Cir. 2016).........  ...........................-7-
*United States V. Saltzman* 537 F.3d 353, 359 (5th Cir. 2008)........................... -7-
*United States V. Krezdorn*, 693 F.2d 1221, 1233 (5th Cir. 1982)........................... -7-

### Supreme Court of the State of Texas

*Carrollton-Farmers Branch ISD v. Edgewood ISD* 826 S.W.2d 489, 493 (Tex. 1992)...........-30-
*Davenport v. Garcia*, 834 S.W.2d 4, 10 (Tex. 1992);.................................................-39-
*Edgewood ISD v. Kirby* 777 S.W.2d 391, 394 (Tex. 1989) .............................................-30-
*Neeley V. West Orange-Cove CISD* 176 S.W.3d 746, 777 (Tex. 2005) ...............................-30-

## Texas Court of Appeals

*Leonard v. Abbott*, 171 S.W.3d 451, 456-58 (Tex. App.—Austin 2005, pet. denied). ………-30,51-
*Metzger v. Sebek*, 892 S.W.2d 20, 37-38 (Tex. App.—Houston [1st Dist.] 1994, writ denied)…-24-

## Constitution of the United States of America

**U.S. Const. art. 3**…..…………………………………………………..…………..-12-
**Supremacy clause U.S. Const. art. VI, cl. 2**; …........……………………….…………-10,30,43-
**First Amendment**……………………………………………………….............………..... -*passim*
**Fourteenth Amendment**………………………………………………………………..-*passim*

## Constitution of the State of Texas

Texas Constitution art. I§§ 27,29……………………………………...……………-21,27,51,55-
Tex. Const. art. 1 § 13……………………………………………………………….....-53-
Article 1. §§ 13,19, 27 and 29……………………………………………...…………-27-

## Statutes

28 United States Code[1] §1331………………………………………….……………-12-
28 U.S.C. §1343(a)  ….……………………………………………………….…………-12-
28 U.S.C. §1391(b). ……………………………………………………………….………-12-
28 U.S.C. §1654 ……………………………………………………………….…………-55-
42 U.S.C 1981 …………………………………………………………….-8,10,12-
42 U.S.C. §1983………………………………………………………………-12,35-
42 U.S.C. §1985………………………………………………………………….-12-
42 U.S.C. §1988………………………………………………………………….-12-
28 U.S.C. §§2201, 2202. ……………………………………………………………….-12-
Texas Civil Practice & Remedies Code[2] Chapter 11, §§11.001 through § 11.104……………….-10 -
Tex. Civ. Prac. & Rem. Code § 11.054 ……………………………………………...……..-*8*-
Tex. Civ. Prac. & Rem. Code § 11.101 ………………………………………………….-9-
Tex. Civ. Prac. & Rem. Code § 11.102……………………………………………….-9-
Tex. Civ. Prac. & Rem. Code § 27.002 ……………………………………………….-16-
Tex. Civ. Prac. & Rem. Code § 27.009(b):…….…………………………………….-33-
Tex. Estates § 402.001……………………………………………………………….-18-
Tex. Estates § 405.002(b)  ……………………………………………………………….-18-
Tex. Estates §§ 361.001, 361.002, and 361.005……………………………………….-19-
Tex. Estates § 355.004……………………………………………………………….-24-
Tex. Estates § 355.058. ……………………………………………………………….-24-
Tex. Estates § 355.059 ……………………………………………………………….-24-
Tex. Estates § 355.064 ……………………………………………………………….-24-

---

[1] Hereinafter referenced as "U.S.C."
[2] "Tex. Civ. Prac. & Rem. Code".

## Questions and Issues Presented:

1.   Whether the Texas Vexatious Litigant Statutes abridge the core First Amendment freedom to petition the government for redress of grievances through Court access;

2.   Whether the Texas Vexatious Litigant Statutes as a Court might apply them constitutes an unlawful prior restraint of core First Amendment Freedoms similar to those the Supreme Court declared facially unconstitutional under ***Citizens United v. FEC,*** 558 U.S. 310, (US 2010);

3.   Does the Texas Courts' refusal to recognize that legal counsel represents Plaintiff, after expressly acknowledging such legal representation, and then dismissing Plaintiffs' meritorious appeal solely on the basis that the Probate Court declared Plaintiff a "vexatious litigant", abridge Plaintiffs' First Amendment guaranteed freedom to petition through Court access *by appeal* and constitute unlawful state action depriving Plaintiff of vested property interests without due process of law, violative of the Fourteenth Amendment?

4.   Does the Probate Court's denial of Plaintiffs' First Amendment challenge and the award of substantial attorney's fees in the event of an appeal, after expressly rejecting the required statutory findings that the pleading is frivolous or solely brought for delay that condition an award of attorney's fees, constitute an "***unconstitutional penalty***" or "***punishment***" imposed upon the exercise of constitutional freedoms declared patently unconstitutional in ***United States v. Goodwin*** 457 U.S. 368, 372 (1982):

   "To punish a person because he has done what the law plainly allows him to do is a due process violation 'of the most basic sort.'. . . . For while an individual certainly may be penalized for violating the law, he just as certainly may not be punished for exercising a protected statutory or constitutional right."

and ***Bordenkircher v. Hayes***, 434 U.S. 357, 363 (1978):

   "To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort, . . . and for an agent of the State to pursue a course of action whose objective is to penalize a person's reliance on his legal rights is "patently unconstitutional.""

and the FIFTH CIRCUIT: [3]

   "To punish a person because he has done what the law plainly allows him to do is a due process violation 'of the most basic sort.'" Accordingly, a prosecutor may not increase the charge or penalty against a defendant ***solely as a punishment for invoking his right to appeal***.

---

[3] ***United States v. Saltzman,*** 537 F.3d 353, 359 (5th Cir. 2008) (citing ***United States v. Krezdorn***, 718 F.2d 1360, 1362-65 (5th Cir. 1983) (*en banc*)); ***United States V. Dvorin,*** 817 F.3d 438, 455 (5th Cir. 2016).

## **Unconstitutional Statutes**

This case requires this Court to reconcile these quasi-criminal statutes with the First Amendment core freedom of the people to petition the government for redress of grievances, and 42 U.S.C §1981 which expressly protects the freedom "*to sue*" and to "*be parties*" *against impairment under color of State law*.

Tex. Civ. Prac. & Rem. Code §11.054[4] provides:

**Criteria for Finding Plaintiff A Vexatious Litigant**
A court may find a plaintiff a vexatious litigant if the defendant shows that there is not a reasonable probability that the plaintiff will prevail in the litigation against the defendant and that:
(1) the plaintiff, in the seven-year period immediately preceding the date the defendant makes the motion under Section 11.051, has commenced, prosecuted, or maintained at least five litigations as a pro se litigant other than in a small claims court that have been:
    (A) finally determined adversely to the plaintiff;
    (B) permitted to remain pending at least two years without having been brought to trial or hearing; or
    (C) determined by a trial or Appellate court to be frivolous or groundless under state or federal laws or rules of procedure;
(2) **after a litigation has been finally determined against the plaintiff, the plaintiff repeatedly relitigates or attempts to relitigate, pro se**, either:
    (A) the validity of the determination against the same defendant as to whom the litigation was finally determined; or
    (B) **the cause of action, claim, controversy, or any of the issues of fact or law determined or concluded by the final determination against the same defendant as to whom the litigation was finally determined**; or
(3) the plaintiff has previously been declared to be a vexatious litigant by a state or federal court in an action or proceeding based on the same or substantially similar facts, transition, or occurrence.

---

[4](App.1)

After a court's declaration that a citizen is a "vexatious litigant" Tex. Civ. Prac. & Rem. Code §11.101[5], authorizes a pre-filing permanent injunction restricting access to Texas Courts punishable by contempt:

**Prefiling Order; Contempt**
(a) A court may, on its own motion or the motion of any party, enter an order prohibiting a person from filing, pro se, a new litigation in a court to which the order Applies under this section without permission of the Appropriate local administrative judge described by Section 11.102(a) to file the litigation if the court finds, after notice and hearing as provided by Subchapter B, that the person is a vexatious litigant.
(b) A person who disobeys an order under Subsection (a) is subject to contempt of court.

Additionally, Tex. Civ. Prac. & Rem. Code §11.102[6] prohibits all *pro se* access to Texas Courts without pre-filing government permission:

**Permission By Local Administrative Judge**
A vexatious litigant subject to a prefiling order under Section 11.101 is prohibited from filing, pro se, new litigation in a court to which the order applies without seeking the permission of:
(a) the local administrative judge. . .;

This statute also requires prefiling notice to all defendants named, and a prefiling determination of the validity of the claim with no right of appeal if permission is denied:

(f) A decision of the appropriate local administrative judge described by Subsection (a)denying a litigant permission to file a litigation under Subsection (d), or conditioning permission to file a litigation on the furnishing of security under Subsection (e), is not grounds for appeal, except that the litigant may apply for a writ of mandamus.

---

[5](App.1)
[6](App.1).

1.      NOW COMES Plaintiff, Paul E. Nunu, United States citizen, through the undersigned counsel of record Donald T. Cheatham, seeking declaratory relief against the STATE OF TEXAS and its Statutory Probate Courts that the Texas Vexatious Litigant Statutes[7] abridge and are unconstitutionally repugnant to core First Amendment freedoms guaranteed to all citizens through the United States Constitution (First Amendment) and injunctive relief enforcing the mandates of the First and Fourteenth Amendments upon the State of Texas and the Statutory Probate Courts, and further declaring the State Court orders herein complained of violative of constitutional protections, as well as, that they are therefore void for lack of subject matter jurisdiction under federal law, averring respectfully in support as follows:

## Introduction

2.      This complaint arises under the Constitution and Statutes of the United States, as well as, invokes the Supremacy Clause that the Constitution "*shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any state to the Contrary notwithstanding*"; the First Amendment clause "*Congress shall make no law . . . abridging. . . the right of the people . . . to petition the Government for a redress of grievances*" through unfettered Court access; and the Fourteenth Amendment prohibition "*No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws*"; and 42 U.S.C §1981 Equal

---

[7](App.1) Texas Civil Practice & Remedies Code Chapter 11, §§11.001 through § 11.104,

Rights Under Law which expressly protects all persons freedom "*to sue*" and to "*be parties*" *against impairment under color of State law*.

3.      Plaintiff invokes the following constitutional standards of review:

"*A law repugnant to the Constitution is void*."[8]

"*An unconstitutional law is void and is as no law.  An offense created by it is not crime.  A conviction under it is not merely erroneous but is illegal and void and cannot be used as a legal cause of imprisonment*."[9]

"*An unconstitutional act is not law.  It confers no rights; it imposes no duties; affords no protection; it creates no office.  It is, in legal contemplation, as inoperative as though it had never been passed*."[10]

"*Where rights secured by the Constitution are involved, there can be no rule-making or legislation which would abrogate them*."[11]

4.      The Texas Vexatious Litigant Statutes are facially unconstitutional because they restrict the protected freedom "*to sue*" and to "*be parties*" and have fettered and punished Plaintiff for seeking Court access to the Rule of Law.

5.      Plaintiff is a natural born citizen of the United States, the greatest country in the history of the world, where the Constitution protects the freedom to exercise the conduct the Probate Courts found vexatious based upon misapplication of the Texas Vexatious Litigant Statutes, namely Plaintiff's filing of one (1) purportedly offending pleading, or Plaintiff filing a Notice of Appeal with counsel, or Plaintiff filing a constitutional challenge to a Texas statute.

---

[8] ***Marbury v. Madison***, 5 U.S.137,180(1803)*; **Fairbank v. United States**,*181 U.S. 283, 286 (1901)*; **Reynoldsville Casket v. Hyde***, 514 U.S. 749, 760 (1995); ***Perez v. Mortgage Bankers***, 575 U.S. 92, 101 (2015).
[9] ***Ex parte Siebold***, 100 U.S. 371, 376 (1879).
[10] ***Norton v. Shelby County***, 118 U.S. 425, 442 (1886).
[11] ***Miranda v. Arizona***, 384 U.S. 436, 491 (1966).

6.     This Court must declare the statutes and such punishment unconstitutional in order to *preserve, protect,* and *defend* the First Amendment freedom to petition the government through unfettered Court access, not just for Plaintiff, but for all Texas citizens, as well as, for persons , who might have related business before Texas Courts..

## Jurisdiction and Venue

7.     The U.S. District Court has federal question jurisdiction under U.S. Const. art. 3, and 28 U.S.C. §§1331,1343(a).   Venue is proper under 28 U.S.C. §1391(b), as all the transactions and occurrences took place within the Southern District and specifically the Houston Division.

8.     Plaintiff seeks relief and damages for civil rights violations made actionable under 42 U.S.C §1981, 42 U.S.C. §1983, 42 U.S.C. §1985, attorney's fees under 42 U.S.C. §1988, and the Declaratory Judgment Act 28 U.S.C. §§2201, 2202.

## Parties

9.     Plaintiff Paul E. Nunu is a natural born citizen of the United States, State of Texas and Harris County.  Service of process upon Plaintiff shall be effective by delivery of pleadings, discovery, instruments, and other documents to counsel of record herein Donald T. Cheatham, at his law Offices, 9801 Westheimer Road, Houston, Suite 300, Texas 77042, (713) 337-0155 Telephone, (713) 400-7696 Telecopier facsimile, email: cheathamlaw@aol.com with copy to nunulawoffice@aol.com.

10.     Defendant STATE OF TEXAS, appearing herein through the Texas Attorney General, in his official capacity, is a sovereign state of the United States of America and service of process upon Defendant shall be effective by delivery of pleadings, discovery, instruments, and other documents

to its Attorney General and counsel of record The Honorable Ken Paxton, Office of the Attorney General, 300 W. 15th Street, Austin, TX 78701, PO Box 12548, Austin, TX 78711-2548, (512) 463-2100 with email:  **const_claims@texasattorneygeneral.gov**.

11.     Defendant the Honorable Michael B. Newman, individually and in his official capacity, is a state actor and the successor to Judge Loyd Wright as Judge Presiding in Plaintiffs' Mothers' probate matter 416,781 and duly elected Judge presiding in Harris County Statutory Probate Court Two (2) located at 201 Caroline, Ste. 680, Houston, Harris County, Texas 77002, (832) 927-1402, Fax (832) 927-1432, and service of process upon this Defendant shall be effective by delivery of pleadings, discovery, instruments, and other documents to Christian D. Menefee, Harris County Attorney, Seth Hopkins, Assistant County Attorney, 1019 Congress Plaza, 15th Floor, Houston, Texas 77002, (713) 274-5141, email: Seth.Hopkins@cao.hctx.net.

12.     Defendant the Honorable Jason A. Cox, individually and in his official capacity, is a state actor and the Harris County Administrative Probate Judge and duly elected Judge presiding in Harris County Statutory Probate Court Three (3) located at 201 Caroline, 7th Floor, Houston, Harris County, Texas 77002, (832) 927-1403, Fax (832) 927-0010, and service of process upon this Defendant shall be effective by delivery of pleadings, discovery, instruments, and other documents to his counsel of record Christian D. Menefee, Harris County Attorney, Seth Hopkins, Assistant County Attorney,  1019 Congress Plaza, 15th Floor, Houston, Texas 77002, (713) 274-5141, email: Seth.Hopkins@cao.hctx.net.

13.     Defendant Charles L. Nunu is a natural person individual citizen of the United States, State of Texas and Harris County and a real party in interest. Service of process upon Mr. Nunu shall be

effective by delivery of pleadings, discovery, instruments, and other documents to his counsel of record W. Cameron McCulloch**,** 2900 Weslayan, Suite 150, Houston, Texas 77027, (713) 572-2900, (713) 572-2902 Fax, email: Cameron.Mcculloch@mmlawtexas.com with copy to clnunu@earthlink.net.

14.     Defendant Nancy Nunu Risk is a natural person individual citizen of the United States, State of Texas and Travis County and a real party in interest. Service of process upon Ms. Risk shall be effective by delivery of pleadings, discovery, instruments, and other documents to her counsel of record W. Cameron McCulloch**,** 2900 Weslayan, Suite 150, Houston, Texas 77027, (713) 572-2900, (713) 572-2902 Fax, email: Cameron.Mcculloch@mmlawtexas.com with copy to nancyrisk1@gmail.com.

### Background

15.     In 1997 the Texas Legislature enacted the Texas Vexatious Litigant Statutes (App.1) whose indisputable purpose is impairing *pro se* litigant unfettered access to Texas Courts through restricting *pro se* litigants *right to sue* and *be parties*.

16.     The statutes provide that a Court may declare a citizen a "Vexatious Litigant" for filing one (1) offending instrument, as the Harris County Texas Probate Court so applied to Plaintiff, which the Texas 14th Appellate Court affirmed, and for which the Texas Supreme Court denied review, and the U.S. Supreme Court denied *certiorari*.

17.     After being declared a "Vexatious Litigant" the statutes prohibit all *pro se* access to Texas Courts without first obtaining pre-filing governmental approval, (App.1) which was unconstitutionally denied in Plaintiff's case.

18.    An offended Court after such declaration may punish through contempt a *pro se* citizen who sues i.e. *petitions the government for redress of grievances*, but fails to obtain pre-filing governmental approval and the posting of security. (App.1)

19.   As shown herein the Texas Courts have uniformly unconstitutionally applied the Vexatious Litigant Statutes to deny Plaintiff access to Texas Courts and impair his right to sue, even when licensed counsel represented him. (Apps.4,9,10,11,&12)

20.   Plaintiff is but one of over 330 Texas/United States citizens whose First Amendment guaranteed freedoms have been declared forfeited by the State of Texas after having been declared "Vexatious Litigants". (App.24)

21.    Each of the 330 Texas/United States citizens so declared are now subject to permanent injunctions requiring pre-filing governmental approval as a condition to exercising their First Amendment freedom to petition the government for redress of grievances.

22.    All Texas Courts have weaponized these laws to avoid deciding meritorious cases for unpopular litigants.

23.    For example, the Texas 14th Appellate Court has unconstitutionally applied the statutes to Plaintiff, a vested heir in a Probate matter, claiming lack of jurisdiction denying him access to the rule of law through unwarranted dismissal of a meritorious Appeal, solely because the Probate Court declared Plaintiff a vexatious litigant and unconstitutionally struck his notice of appeal. (Apps.9&11).

24.    The Appendix attached hereto and incorporated by reference herein demonstrates numerous instances of Texas Courts' unconstitutional application of these statutes to Plaintiff.

25.    For example, Probate Judge Newman <u>re-declared</u> Plaintiff a vexatious litigant for filing a

16

notice of appeal while represented by counsel. (Apps.5&9)

26.     After Plaintiff acting through Counsel filed a First Amendment challenge under the Texas Citizens Participation Act ("TCPA")[12], (App.15) seeking to declare the Texas Vexatious Litigant Statutes unconstitutional, Probate Judge Newman punished Plaintiff for filing the constitutional challenge by re-declaring him a vexatious litigant a third time and awarding substantial attorney's fees as a penalty[13] in the event Plaintiff exercises his First Amendment right to appeal, dismissing without review the constitutional challenge raised. (Apps.15&16)

27.     The 14th Appellate Court recently affirmed Judge Newman's penalty (App.12) while again refusing to address the First Amendment constitutional challenge to the Texas Statutes, and thereafter denying rehearing *En Banc* (App.13) and further striking meritorious pleadings in the Probate Court. (App.14)

28.     The TCPA's stated purpose "*is to encourage and safeguard the constitutional rights of persons **to petition**, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury*"[14] but all Texas Courts have refused to *preserve, protect and defend* the core First Amendment freedom to petition when the Vexatious Litigant Statutes are invoked.

---

[12] "TCPA" as codified in Chapter 27 of the Texas Civil Practice and Remedies Code.

[13] Probate Judge Newman denied Plaintiffs' constitutional challenge in a 31 May 2019 Order and expressly rejected by delineation and initials Defendants' proposed findings that Plaintiff's Motion to Dismiss was frivolous or solely intended for delay. Nevertheless, after refusing to find Plaintiffs' constitutional challenge to be frivolous or solely intended for delay, Probate Court 2 Judge Newman nevertheless punished Plaintiff by the award to Defendants trial and appellate attorney's fees totaling almost $34,000.

[14] Tex. Civ. Prac. & Rem. Code § 27.002.

29.     As Plaintiff has shown herein the Texas Courts have systemically ignored United States citizens' First Amendment freedoms under these statutes, requiring this Honorable U.S. District Court to render declaratory relief that the Texas Vexatious Litigant Statutes are facially unconstitutional and issue a permanent injunction enforcing the mandates of the First and Fourteenth Amendments upon the State of Texas and its Probate Courts protecting United States citizens and other persons with business  before those Courts from such statutes.

### Statement of Facts

30.     For     constitutional     argument     purposes     Plaintiff     adopts     the     Texas     14th Appellate Court's statement of facts contained in its opinion affirming the vexatious litigant order.[15]

31.     However, Plaintiff submits these additional relevant facts:

32.     Plaintiff is an ethical and responsible thirty-nine (39) year Texas Attorney and licensed Certified Public Accountant, who has been a member of the State Bar of Texas since 1982, and the U.S. Supreme Court's Bar since 1994, with no disciplinary or criminal history, who for almost nine (9) years has been trying to obtain an accounting and his rightful inheritance from his mother's debtless estate, which efforts the Harris County Texas Probate Court Judge Loyd Wright and his number one campaign contributor Attorney Cameron McCulloch[16] have thwarted.

### The Probate Conflict

---

[15](App.3)
[16](App.25)

33.     After Plaintiff non-suited his claims against Defendant Executrix Nancy Nunu Risk for self-dealing with a $17,000 pre-paid insurance policy that she secretly cashed in and deposited in her personal bank account, and then required a full release as a condition to distribute Decedent's Estate, in direct violation of Texas Estates Code § 405.002(b),[17] Harris County Probate Court Judge Loyd Wright entered a 14 April 2016 Final Judgment.

34.     Seven months after the non-suit judgment Plaintiff discovered the "Raymond Risk Memorandum",[18] which is compelling evidence that Executrix misapplied substantial undisclosed financial assets she held in trust for Plaintiff and his siblings.

35.     Defendant Executrix Risk filed a 15 November 2016 Application to Resign and to Appoint a Dependent Administrator but refused to account or to file the statutorily required accounting for her last 14 months tenure as Independent Executrix.

36.     Plaintiff objected[19] to the creation of the dependent administration on the grounds that the Will expressly prohibited the dependent administration and that under Texas law once an independent administration is created, Tex. Estates § 402.001[20]  bars all other types of probate administrations and further that Tex. Estates § 361.001 "Resignation Application," emphatically

---

[17]   **Tex. Estates § 405.002. Receipts and Releases For Distributions By Independent Executor** (b) An independent executor may not require a waiver or release from the distributee as a condition of delivery of property to a legatee.

[18](App.20)

[19](App.18)

[20]**Tex. Estates § 402.001. General Scope And Exercise Of Powers**
When an independent administration has been created, and the order appointing an independent executor has been entered by the probate court, and the inventory, appraisement, and list of claims has been filed by the independent executor and approved by the court or an affidavit in lieu of the inventory, appraisement, and list of claims has been filed by the independent executor, as long as the estate is represented by an independent executor, *further action of any nature may not be had in the probate court except where this title specifically and explicitly provides for some action in the court.*

requires that: "*A personal representative who wishes to resign the representative's trust **shall file** a written application with the court clerk, **accompanied by a complete and verified exhibit and <u>final account</u> showing the true condition of the estate entrusted to the representative's care.*"

37.     Over Plaintiffs' numerous objections[21] Probate Judge Loyd Wright entered a 12 January 2017 Order[22], accepting Executrix' resignation and discharging her of further probate Estate duties, without requiring the statutorily mandated Texas Estates Code § 361.001 accounting, and further encumbering the entire estate into a statutorily prohibited "dependent administration".

38.     Probate Judge Wright's   creation of a dependent administration the all controlling will prohibited  so violated the express terms of that very  Probated Will[23]: "*I direct that no action shall be taken in any court in the administration of my estate other than probating and recording of this Will and the return of an inventory appraisement and list of claims of my estate*"(this language has the force of law through Tex. Estates § 401.001[24]); violated the express terms of prior Final Judgment Admitting the Will to Probate entered on November 27, 2012[25] which states: "*It is ORDERED that . . . no other action shall be had in this Court other than the return of an Inventory, Appraisement, and List of Claims as required by law*"; violated the statutory prohibition of Tex. Estates § 402.001 prohibiting *further action of any nature after independent administration has been created and all*

---

[21](App.18)
[22](App.19)
[23](App.17)
[24] **Tex. Estates § 401.001(a). Expression of Testator's Intent In Will**
Any person capable of making a will may provide in the person's will that no other action shall be had in the probate court in relation to the settlement of the person's estate than the probating and recording of the will and the return of any required inventory, appraisement, and list of claims of the person's estate.
[25](App.17)

*conditions met*; and violates the statutory prohibitions of Tex. Estates §§ 361.001, 361.002, and 361.005 when the Court accepted the resignation and "*relieved*" Executrix of further duties without the statutorily required accounting.

39.     This action of discharging Executrix without providing an accounting is a statutorily prohibited act under Texas Estates Code §§ 361.002(b)[26] and 361.005(a)(2).[27]

40.     The obvious purpose of these statutes is to prevent Executrix fraud.

41.     Probate Judge Wright entered three orders dated 12 January 2017, 8 February 2017, and 25 May 2017[28] denying the statutorily mandated accounting and denying reconsideration of the dependent administration.

42.     Plaintiff thereafter filed his 27 October 2017 Application to Enforce the Forfeiture Provisions of the Probated Will, as well as, for Fraud and Breach of Contract Damages[29] (the offending pleading) against Defendants Nunu and Risk, on the specific grounds that seven (7) months after entry of the 14 April 2016 Final Judgment, Defendants grossly violated Decedent's Will's express prohibition when they filed for a Dependent Administration to wit:

> "…I direct that <u>no action shall be taken in any court in the administration of my estate</u> *other than* <u>probating and recording of this Will</u> and the return of an inventory appraisement and list of claims of my estate…"

---

[26] **Tex. Estates § 361.002. Immediate Appointment Of Successor; Discharge And Release**
(b) **The court may not discharge a person** whose resignation is accepted under Subsection (a), or release the person or the sureties on the person's bond, **until a final order has been issued or judgment has been rendered on the final account** required under Section 361.001.
[27]**Tex. Estates § 361.005. Requirements For Discharge**
(a) A personal representative Applying to resign **may not be discharged** until:
(2) the exhibit and **final account required under Section 361.001 have been examined, settled, and Approved**;
[28](App.19)
[29](App.20)

43.     Defendants' request for a dependent administration was a material violation of this provision and automatically implicated that Will's forfeiture provision[30], which Plaintiff sought to enforce:

> **"If any person. . . shall either directly or indirectly attempt . . . to impair or invalidate any of the provisions hereof and such person shall establish a right to any part of my estate . . . I give and bequeath to such person the sum of ONE DOLLAR ($1.00) only and no further interest whatsoever in my estate."**

44.     Defendants then filed a 4 December 2017 Motion to Declare Paul E. Nunu a Vexatious Litigant and set that motion for 4 January 2018[31] hearing.

45.     Plaintiff alleges that Defendants used the Vexatious Litigant Statutes as a SLAPP action to avoid accounting and disclosure of estate property fiduciary misapplications, as well as, means to avoid the ill effects of the forfeiture clause, and means to deprive Plaintiff of his rightful inheritance without due process of law.

46.     Plaintiff filed a verified response in opposition asserting the specific protections of the Texas Constitution Art. I, §§ 19, 27, and 29 and conclusively demonstrating that the 27 October 2017 instrument sought enforcement of the forfeiture provision of his Mothers' probated Will, **based upon post non-suit violations of the probated will and without relitigating prior non-suited claims.**

47.     Specifically, the 27 October 2017[32] instrument sought enforcement of the forfeiture provision based upon the establishment of an unlawful dependent administration per order of 12 January 2017 created nine months after the final judgment of 16 April 2016.

---

[30](App.17)
[31](App.21)
[32](App.20)

48.     The Texas 14th Appellate Court in affirming the Vexatious Litigant Order[33]  neither addressed nor adjudicated the true substance of the purportedly offending pleading, to wit: <u>Application to Enforce Forfeiture Provision of Will</u> and for Fraud and Breach of Contract Damages based upon the unlawful post judgment violation of the probated Will by converting the independent administration to a dependent administration.

49.     The Appellate Court in affirming the Vexatious Litigant Order refused to address the merits of the forfeiture provision cause of action, instead interpreting Plaintiff's "background facts," declaring that Plaintiff relitigated prior non-suited claims.[34]

50.     Plaintiff never engaged in five (5) litigations, as the Vexatious Litigant Statutes require[35] as only one Probate case exists.

51.     None of the Criteria listed in Tex. Civ. Prac. & Rem. Code § 11.054[36] are applicable to Plaintiff for what he has done in this case, or anywhere else.

## UNCONSTITUTIONAL STATE ACTIONS

52.     Harris County Probate Judge Loyd Wright entered the 30 January 2018[37] Vexatious Litigant Order declaring Plaintiff a "vexatious litigant" with pre-filing permanent injunction that required Plaintiff to post $15,000USD surety bond or the Court would dismiss his claims,[38] all because Plaintiff

---

[33](App.3)
[34](App.3)
[35](App.1)
[36](App.1)
[37](Apps.2&21)
[38](App.2)

filed one *pro se* purportedly offending instrument[39] as expressly found by the 14th Appellate Court in the two (2) opinions hereto attached.[40]

53.    Judge Wright declared Plaintiff a vexatious litigant with **no evidence offered or admitted at the hearing**[41] which standing alone should constitute a §1983 due process violation.

54***.***    Plaintiff believes Judge Wright's actions described herein were retaliation for Plaintiff discovering the "Raymond Risk Memorandum, a document establishing that Executrix with the aid and assistance of her counsel Mr. McCulloch, his number one campaign contributor,[42] misapplied substantial estate assets.

55.    Plaintiff appealed the Vexatious Litigant Order in part on the grounds Judge Wright demonstrated his personal *animus* against Plaintiff on two occasions, attacking Plaintiff without provocation.

56.    Two (2) months after Judge Wright declared Plaintiff a vexatious litigant, on 22 March 2018 he stated directly from the bench in a hearing wherein Plaintiff sought to have the estate distributed:

"**You are such a pompous, condescending jerk." "You're just a whiner. Keep whining.**"[43]

57.    Then again in a separate hearing a month later on 12 April 2018 Judge Wright reiterated

"**What have I called you? A pompous jerk. I stand on that. You are a whiner.**"[44]

---

[39](Apps.3&12) The 14th Appellate Court Opinion of 22 October 2020 attached as App.12 repeats on page 5 its previous finding in the appeal of the vexatious litigant order that Plaintiff was declared a vexatious litigant for the filing of one offending pleading i.e. the Application to Enforce Forfeiture Provision of Will.
[40](Apps.3&12)
[41](App.21)
[42](App.25)
[43](App.22, p.35, Line*17*)
[44](App.23, p.6, Line10.

58.      The 14th Appellate Court refused to acknowledge or consider this evidence when it affirmed the Vexatious Litigant Order and pre-filing permanent injunction in its 15 January 2019 published opinion[45] despite the express assertion that the due-process clauses of both the Texas and the United States Constitution's guarantee a party an impartial and disinterested tribunal in civil cases.[46]

59.      Immediately after Judge Wright was voted out of office in the November 2018 election and the Appellate Court's 15 Jan 2019 affirmation, Plaintiff acting in compliance with the statutes sought pre-filing governmental approval from the Probate Court to file a related meritorious appeal of a $45,712 attorney's fee judgment against the Estate, wherein he is a vested heir with statutory standing to appeal,[47] on the basis that express Estates Code statutes time bar the claim and bar the claim on the merits.[48]

60.      The Honorable Administrative Probate Judge Jason Cox unconstitutionally blocked Plaintiff's right to appeal the attorney's fee judgment entering the 31 January 2019 Administrative Order[49]:

"*after reviewing the Notice of Appeal . . . the Administrative Judge DENIES Paul E. Nunu permission to proceed with this litigation.*"

61.      Minutes after Plaintiff received notice of the Administrative Probate Judge's denial of pre-filing permission, he retained the undersigned counsel and filed the 31 January 2019 Notice of Appeal.[50]

---

[45](App.3)
[46]*Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980); *Metzger v. Sebek*, 892 S.W.2d 20, 37-38 (Tex. App.—Houston [1st Dist.] 1994, writ denied).
[47]Tex. Estates Code § 355.058.
[48]Tex. Estates § 355.064 time bars the claim; Tex. Estates § 355.059 bars the claim on the merits because claimant did not furnish the requisite Tex. Estates § 355.004 Affidavit.
[49](App.4).
[50](App.5).

62.    The Notice of Appeal was e-filed by Plaintiff, an attorney with e-filing privileges, at the express direction of the undersigned Counsel and listed the undersigned Counsel as attorney in charge of the appeal.

63.    Counsel soon determined that the Notice of Appeal was 14 days late and immediately filed a motion to extend time for filing the Notice of Appeal with the Appellate Court, with reasonable explanation therein, which late filing Texas law permits.

64.    The Texas 14th Appellate Court <u>formally granted</u> Plaintiff's Motion to Extend Time to File the Notice of Appeal in a 14 March 2019 Order.[51]

65.    Six (6) weeks later Probate Judge Newman upon Defendants' Motion in a 24 April 2019 Order[52] <u>re-declared</u> Plaintiff a vexatious litigant directly for filing the Notice of Appeal and struck the Notice of Appeal then entering a second permanent pre-filing injunction placing even more onerous conditions upon Plaintiff for access to Texas Courts.

66.    Probate Judge Newman's striking the notice of appeal was unconstitutional punishment, as the vexatious litigant statutes expressly apply only to *pro se* filings[53] and never those where there is legal representation.

67.    The striking of the notice of appeal was punitive because it occurred after a 16 April 2019 oral hearing wherein Probate Judge Newman had actual knowledge that the undersigned licensed legal

---

[51](App.8).
[52](App.9)
[53](App.1)

counsel has represented Plaintiff at all times since filing the 31 January 2019 Notice of Appeal, as acknowledged by the Probate and Appellate Court's Clerks.[54]

68.     Despite Probate Court Clerk acknowledgment, the Appellate and Probate Judges have unconstitutionally refused to recognize such representation.

69.     Two months after Probate Judge Newman struck the notice of appeal, on 20 June 2019, after briefing was complete and the case was ready for decision, the 14th Appellate Court dismissed Plaintiff's Appeal[55] on the specific grounds that the Probate Court had declared Plaintiff a vexatious litigant and had stricken the notice of appeal:

> "This is an attempted appeal from a final order awarding attorneys' fees and costs in a probate matter signed October 19, 2018.  Plaintiff has been declared a vexatious litigant, a declaration this court has affirmed. N.B. ***Nunu v. Risk***, 567 S.W.3d 462, 469 (Tex. App.-Houston [14[th] Dist.] 2019, pet. filed)."

> "Plaintiff filed a motion for new trial with respect to the October 19 order on November 16, 2018. "Plaintiff was required to obtain permission to appeal the order, but the administrative judge denied permission. Notwithstanding the denial of permission, Plaintiff filed a notice of appeal on January 31, 2019. After conducting a hearing, the trial court struck Plaintiff's notice of appeal. After the trial court struck Plaintiff's first notice of appeal, Plaintiff filed an amended notice of appeal outside of the 90-day time period for filing a notice of appeal and beyond the additional 15-day grace period for filing a motion for extension of time to file a notice of appeal. Tex. R. App. P. 26.1(a); *Verburgt v. Dorner*, 959 S.W.2d 615, 617–18 (1997). Because the trial court struck Plaintiff's first notice of appeal, and because Plaintiff's amended notice of appeal is untimely, neither notice of appeal invoked this court's jurisdiction."

### Guaranteed Constitutional Freedoms

70.     Despite the United States and State of Texas Constitution's mandates for a person's guaranteed freedom to peaceably petition the government for redress of grievances through

---

[54](Apps.6&7)
[55](App.11)

unfettered court access, and Congress' enactment of 42 U.S.C §1981 express protection of the right "*to sue*" and to "*be parties*" against impairment *under color of State law*, the Texas Legislature in 1997 enacted the Texas Vexatious Litigant Statutes, ("the Statutes") thereby creating prior restraint and restriction of previously unfettered access to Texas Courts.

71.    This complaint invokes review of the Texas Court's systemic failure to correctly apply the highest laws of our land, namely the United States Constitution's First Amendment freedom to petition the government for redress of grievances, and the Texas Constitution Article I, §§ 13[56], 19[57], 27[58], and 29[59] guaranteed privileges and immunities.

72.    The Texas Constitution Article I, § 27 provides even greater protections for the exercise of the freedom to petition then its Federal counterpart by stating the freedom as an affirmative right of the citizens to *apply to those invested with the powers of government for redress of grievances or other purposes,* **by petition***, address or remonstrance.*

*73.*    Texas Constitution Article I, § 29 expressly declares the guaranteed freedom to petition **shall forever remain inviolate** and **all laws contrary thereto shall be void**.

---

[56]**§13. EXCESSIVE BAIL OR FINES; CRUEL AND UNUSUAL PUNISHMENT; REMEDY BY DUE COURSE OF LAW:** Excessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishment inflicted. **All courts shall be open**, **and every person for an injury done him**, in his lands, goods, person or reputation, **shall have remedy by due course of law**.
[57]**§19. DEPRIVATION OF LIFE, LIBERTY, ETC.; DUE COURSE OF LAW: No citizen of this State shall be deprived of** life, liberty, property, **privileges or immunities**, or in any manner disfranchised, **except by the due course of the law of the land**.
[58]**§27. RIGHT OF ASSEMBLY; PETITION FOR REDRESS OF GRIEVANCES: The citizens shall have the right**, in a peaceable manner, to assemble together for their common good; and **apply to those invested with the powers of government for redress of grievances** or other purposes, **by petition**, address or remonstrance.
[59]**§29. PROVISIONS OF BILL OF RIGHTS EXCEPTED FROM POWERS OF GOVERNMENT; TO FOREVER REMAIN INVIOLATE:** To guard against transgressions of the high powers herein delegated, we declare that everything in this 'Bill of Rights' is excepted out of the general powers of government, and shall forever remain inviolate, and **all laws contrary thereto**, or to the following provisions, **shall be void**.

74.     As a matter of indisputable Texas constitutional mandate, the State of Texas and the Probate Courts lack subject matter jurisdiction to make or enforce any law that violates the Texas Bill of Rights guaranteed freedom to petition:

> Texas Constitution Article I, **§ 29. PROVISIONS OF BILL OF RIGHTS EXCEPTED FROM POWERS OF GOVERNMENT; TO FOREVER REMAIN INVIOLATE:** To guard against transgressions of the high powers herein delegated, we declare that everything in this 'Bill of Rights' is excepted out of the general powers of government, and shall forever remain inviolate, and **all laws contrary thereto**, or to the following provisions, **shall be void**.

75.     The statutes, orders, and opinions challenged in this case are therefore void for lack of subject matter jurisdiction because "*everything in this 'Bill of Rights' is excepted out of the general powers of government, and shall forever remain inviolate, and **all laws contrary thereto**, or to the following provisions, **shall be void."***

76.     The statutes, orders, and opinions challenged in this case are "***patently unconstitutional***" under Federal Law because they are official **state actions *punishing*** the exercise of First Amendment freedoms and are therefore unconstitutional and void.

77.     Under the United States Constitution, the First Amendment is binding upon the Legislature of the State of Texas through the Fourteenth Amendment, which expressly forbids the State of Texas and its judiciary from making or enforcing any law abridging the First Amendment guaranteed freedom to petition through unfettered Court access.

78.     This language "*Congress shall make no law . . . abridging. . . the right of the people . . . to petition the Government for a redress of grievances*" and "*No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States*" constitutes a constitutional mandate binding upon the State of Texas through the Fourteenth Amendment.

79.     42 U.S.C 1981 Equal Rights Under Law pre-empts State law and expressly protects all persons freedom "*to sue*" and to "*be parties*" from and against *impairment under color of State law*.

80.     There are no conditions or limitations upon a citizens' peaceable exercise of the right to petition or to access open courts under either the Texas or United States Constitutions.[60]

81.     The Constitutions protect all citizens, including Plaintiff.

82.     The Vexatious Litigant Statutes directly abridge these constitutional mandates.

83.     The State of Texas violated these constitutional mandates when it enacted the Vexatious Litigant Statutes, and each and every time Texas Courts have unconstitutionally applied these Statutes against United States citizens.[61]

84.     These Statutes have resulted in no fewer than one hundred-nineteen (119) published Texas Court of Appeals cases,[62] none of which have addressed the statutes' abridgment of the core First Amendment freedom to petition the government through Court access, as the Supreme Court has interpreted.

85.     The Texas Supreme Court refused to review every state and federal constitutional challenge to the Vexatious Litigant Statutes, now totaling more than thirty-nine (39) times since 2005.[63]

---

[60] *See* U.S. Const. amends. I (right to petition) XIV (due process);[60] Tex. Const. art. I, § 13 ("All courts shall be open, and every person for an injury done him . . . shall have remedy by due course of law"); Tex. Const. art. I, § 27 **The citizens shall have the right**, in a peaceable manner, to . . . **apply to those invested with the powers of government for redress of grievances** or other purposes, **by petition**, address or remonstrance.; Tex. Const. art. I, § 19 (due course of law); Tex. Const. art. I, § 29 (rights shall remain inviolate).

[61] (App.24)

[62] Casemaker Texas search "**vexatious litigant 11.054**".

[63] Plaintiff moves the Court to take Judicial Notice of the following Texas Supreme Court rulings: 1.*Nunu v. Risk*, TXSC19-0284; 2.*McCann v. Spencer Plantation Investments In re Douglas*, TXSC18-1079; 3.*Vodicka v. A.H. Belo Corp.* TXSC18-0897; 4.*Nixon v. Attorney General of Texas* TXSC*18-1005; 5.Jones v. Anderson* TXSC18-0578; 6.*In re S.V.* TXSC17-0877; 7.*Yazdchi v. BBVA Compass Bank*, TXSC17-0675; 8.*In re Guardianship of Estate of L. S* TXSC17-0429; 9.*Harper v. State* TXSC16-0739; 10.*Yazdchi v. Jones* TXSC16-0844;

30

86.     This complaint invokes Supremacy and due process violations because the 14th Appellate Court in affirming the Probate Courts, taking their cue from the Texas Supreme Court, have refused to consider a properly presented First Amendment challenge to the constitutionality of a Texas statute, despite expressly finding jurisdiction.[64]

87.     All Texas Courts, collectively and individually, have a non-discretionary, non-delegable duty to consider constitutional challenges to Texas statutes under the Supremacy Clause of the United States Constitution, and established Texas Supreme Court precedent.[65]

88.     As demonstrated in the Appendix attached hereto and incorporated herein, the 14th Appellate Court has **consciously ignored** Plaintiffs' pleas for constitutional protections in no less than three (3) separate appeals.

89.     First, in the appeal of the Vexatious Litigant Order Plaintiff, appearing *pro se*, timely asserted Texas Constitutional protections to the Probate Court and the Appellate Court which were completely ignored by the 14th Appellate Court.

---

11.*Akinwamide v. Transportation Insurance Co*. TXSC16-0962; 12.*McClain v. Dell Inc.,* TXSC15-0872; 13.*Jones v. Markel*, TXSC15-0869; 14.*Judd v. Corey-Steele* TXSC15-0386; 15.*Sparkman v. Microsoft Corp.* TXSC15-0347; 16.*Thomas v. Texas Department of Criminal Justice Officer Adams,* TXSC14-1023; 17.*Thomas v. Texas Department of Criminal Justice-Institutional Division,* TXSC14-0515; 18.*Serrano v. Pellicano Park, L.L.C.,* TXSC14-0455; 19.*Douglas v. Redmond,* TXSC13-0145; 20.*Kastner v. Martin & Drought, P.C.,* TXSC11-0648; 21.*James v. Parish,* TXSC11-0229; 22.*Luckett v. Brinker Restaurant Corp.,* TXSC11-0118; 23.*Jon v. Gaston,* TXSC10-1033; 24.*In re Douglas,* TXSC11-0056; 25.*Salazar v. Service Corporation International* TXSC10-0313; 26.*Sweed v. Nye* TXSC10-0264; 27.*Clifton v. Walters,* TXSC10-0359; 28.*Smith v. Livingston,* TXSC10-0080; 29.*Cantu v. Dominguez,* TXSC10-0218; 30.*Drum v. Calhoun,* TXSC10-0073; 31.*Drake v. Andrews,* TXSC09-0932; 32.*Wanzer v. Garcia,* TXSC09-0710; 33.*In re Kim,* TXSC09-0468; 34.*Akinwamide v. Transportation Insurance Co*. TXSC08-0496; 35.*Wakeland v. Wakeland,* TXSC08-0249; 36.*Brown v. Texas State Board of Nurse Examiners,* TXSC07-1001; 37.*In re Andrews,* TXSC07-0687; 38.*Willms v. Americas Tire Co., Inc.,* TXSC06-0359; 39.*Leonard v. Abbott,* TXSC05-0848.
[64](App.12)
[65]*Neeley V. West Orange-Cove CISD,* 176 S.W.3d 746, 777 (Tex. 2005); *Carrollton-Farmers Branch ISD v. Edgewood ISD* 826 S.W.2d 489, 493 (Tex. 1992); and *Edgewood ISD v. Kirby* 777 S.W.2d 391, 394 (Tex. 1989)

90.     Through counsel and Petition for Review, Plaintiff filed his first First Amendment challenge in the Texas Supreme Court, which denied review.

91.     Second, even when represented by the undersigned counsel, the Appellate Court declared lack of appellate jurisdiction claiming incorrectly that Plaintiff filed a *pro se* notice of appeal, even after the Court expressly granted Plaintiff through his counsel an extension of time to file the notice of appeal.

92.     As shown by the Appendix, the Notice of Appeal was clearly filed under the umbrella of Counsel, a fact still denied by the 14th Appellate Court.[66]

93.     After dismissal, Plaintiff sought rehearing based upon a First Amendment challenge which was denied by the 14th Appellate Court *En Banc*, as was the second First Amendment challenge Plaintiff then made to the Texas Supreme Court.

94.     Third, in the TCPA appeal the 14th Appellate Court undeniably states that Plaintiff raised a First Amendment challenge but wholly refused to consider any aspect of it.[67]

95.     The 14th Appellate Court has completely ignored Plaintiffs' guaranteed United States and Texas Constitutional protections, instead vilifying the filing of one pleading.

96.     Plaintiff has asserted constitutional protections against the Vexatious Litigant Statutes at each and every level of this continuing saga, only to be ignored again and again, and now a third time by the Texas 14th Appellate Court.

97.     The 14th Appellate Court had no right to ignore pleas for constitutional protection from a citizen

---

[66] (App.12)
[67] (App.12 at p. 7 of 12)

and should have acted to preserve, protect and defend all of these constitutional protections for all citizens of Texas, instead the 14th Appellate Court has affirmed the Probate Court's award of approximately $34,000 appellate attorney's fees plus $12,640 attorney's fees as **a penalty or punishment** for exercising his constitutional right to appeal and enforce the Rule of Law, yet the Court never addressed the merits of the appeal, thus constituting a due process violation of the most basic sort.

98.     The 14th Appellate Court's failure to consider constitutional challenges is a clear dereliction of its first and foremost duty under the Constitution and a complete denial of due process of law that must be remedied by this Court.

### Reasons to Grant Relief

99.     Plaintiffs' case presents a gross and continuing violation of the core natural freedom for unfettered Court access enjoyed by every United States citizen, which is an express freedom protected under 42 U.S.C. §1981 from *impairment under color of State law*.

100.    Texas Courts have ignored the express freedoms protected under §1981 repeatedly and unconstitutionally misapplied these Statutes against Plaintiff and other United States citizens at least 330 times.[68]

101.    Plaintiffs constitutional argument to void the Vexatious Litigant Statutes and Orders enforcing the same is simple: The First Amendment, §1981 and controlling Supreme Court precedent immunizes all petitioning conduct complained of including the punitive award of attorney's fees.

---

[68](App.24)

102.    The Supreme Court of the United States said it best: "*To punish a person because he has done what the law plainly allows him to do is a due process violation "of the most basic sort.". . .  For while an individual certainly may be penalized for violating the law, he just as certainly may not be punished for exercising a protected statutory or constitutional right.*" [69]

103.    The Order striking the Notice of Appeal is presumptively unconstitutional because it punishes lawful conduct and is a prior restraint of guaranteed constitutional freedoms, depriving Plaintiff of vested property interests without due process of law.

104.    The Order denying Plaintiffs' constitutional challenge then awarding substantial attorney's fees without the TCPA[70] required findings that Plaintiff's motion was frivolous or solely intended to delay, the Probate Court unconstitutionally punished Plaintiff when it awarded substantial attorney's fees in the event of an appeal.

105.    Because the statutory conditions for the award of attorney's fees under the TCPA were clearly not met, the award is punitive.

106.    Because the 14th Appellate Court refused to consider the constitutional challenge to the Vexatious Litigant Statutes now a third time, it is reasonable to assume that the affirmance of the attorney's fee award by that Court was punishment for raising the constitutional challenge.

107.    Indeed, it is clear from the 14th Appellate Court's vitriolic Opinion[71] that the award is punitive

---

[69] ***United States v. Goodwin*** 457 U.S. 368, 372 (1982).

[70] Tex. Civ. Prac. and Rem. Code § 27.009(b):

**If the court finds** that a motion to dismiss filed under this chapter **is frivolous or solely intended to delay**, **the court may award court costs and reasonable attorney's fees** to the responding party.

[71](App.12)

because it uses the adjective "*vexatious*" sixty-eight (68) times to describe Plaintiff's pursuit of the Rule of Law.

108.    The 14th Appellate Court's decision is *patently unconstitutional* because it affirms the Probate Courts' punishment of Plaintiff with over $34,000 in appellate attorney's fees for exercising his non-frivolous First Amendment guaranteed right to appeal the denial of First Amendment protections.

109.    The 14th Appellate Court's decision is *patently unconstitutional* because it punishes Plaintiff by affirming $12,615 in attorney's fees that were expressly sought and denied by prior final judgment that the 14th Appellate Court declared was not in the record.

110.    This is a punitive award because the 14th Appellate Court expressly refused to consider the res judicata effect of the final judgment properly raised as a bar to the award.

111.    All of the State Court Orders attached herein are presumptively unconstitutional because they abridge Plaintiffs' First Amendment freedom to petition through Court access and the Fourteenth Amendment guarantee of due process and must be declared void.

112.    Through statute and judicial decree, the State of Texas has refused to protect core constitutional freedoms, instead acting to punish and declare void citizens' fundamental constitutional and natural rights that this Court must now act to protect.

113.    The Administrative Order denying Plaintiff permission to appeal and the Order striking the notice of appeal freezes, not chills, First Amendment expression thus constituting the deprivation of a substantive constitutional freedom, and deprivation of substantive and procedural due process

expressly recognized as actionable under §1983 by the Fifth Circuit[72] discussed below.

## ARGUMENT

114.    The proverbial "buck" to protect constitutional freedoms stops with this United States District Court, especially when all Texas Courts have refused to protect core freedoms.

115.    Any state action, whether through statute or judicial decree abridging any First Amendment freedom does violence to all constitutionally guaranteed freedoms.

116.    The Supreme Court has declared the First Amendment freedom to petition through Court access to appeal to be a cognate right[73], equal in dignity and inseparable from the freedom of speech, and the right conservative of all other rights constitutionally protected.[74]

117.    The freedom to appeal is guaranteed by the Petition clause.[75]

118.    Because the freedoms of speech and petition are inseparable cognate First Amendment freedoms, the same constitutional standards and analysis apply to each.

119.    The Supremacy Clause requires State Courts to invalidate state laws that conflict with federal laws, which are preempted and "without effect."[76]

120.    If Texas Courts can restrict undeterred access to the Rule of Law even to someone with active competent able legal representation, then there is no Rule of Law in Texas.

121.    Nor is there any limitation to the deprivations the State of Texas can effectuate upon United States citizens and other persons in so denying and punishing undeterred Court access.

---

[72]*Jackson v. Procunier*, 789 F.2d 307, 310 (5th Cir. 1986)
[73]*Borough of Duryea, Pennsylvania V. Guarnieri*, 564 U.S. 379, 388 (2011)
[74]*Chambers v. Baltimore and Ohio Railroad Company* 207 U.S. 142, 148 (1907).
[75]*Borough of Duryea, supra.*
[76]U.S. Const. art. VI, cl. 2; *Maryland v. Louisiana*, 451 U.S. 725, 746, (1981).

122.   The Appellate Court's dismissal even after entering that Court's Order granting Extension of Time to File Notice of Appeal is state action depriving Plaintiff of vested property interests through unlawful adjudication without due process of law violative of the Fourteenth Amendment.[77]

123.   Such statutory misapplication not only deprives Plaintiff of vested property interests without due process of law and the freedom to petition through Court access, rather such statutory misapplication chills all constitutional protections.

124.   Without the freedom for unfettered Court access, the protections of the First and Fourteenth Amendments are meaningless.

125.   The United States Constitution's First, Second, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth and Tenth Amendments, as well as, the Fourteenth Amendment all encapsulate the broad constitutional freedom for unfettered Court access.

126.   The unfettered natural Court access right resonates throughout those Amendments, not to mention the Constitution's core provisions.

127.   Without unfettered Court access there would not be a **_Magna Carta_** and constitutional mandate for the right of _Habeas Corpus._

128.   All state and federal Courts share the express common duty to "_preserve, protect and defend_" the United States Constitution, however as shown herein, all Texas Courts' have refused to preserve, protect and defend this core First Amendment freedom with regards to the Vexatious Litigant Statutes.

---

[77]**_Logan v. Zimmerman Brush Co._**,455 U.S. 422, 428,(1982).

129.   The Texas Supreme Court' refusal to review every single constitutional challenge to these Statutes, no less than thirty-nine (39) times since 2005, constitutes an unconstitutional "*conspiracy of silence*" that this Court must now hereby terminate.

130.   Likewise, the Texas Appellate Courts have only addressed constitutional challenges in eight (8) of the one hundred-nineteen (119) published cases, denying all challenges without substantive analysis, wholly failing to protect core First Amendment freedoms.

131.   These failures by Texas Courts deprive Plaintiff and other citizens of equal protection of core First and Fourteenth Amendment guaranteed privileges and immunities and must be declared void because they place onerous restrictions on unfettered constitutional freedoms.

132.    The Constitution protects the freedom to exercise the conduct the Texas Courts found vexatious based upon misapplication of the Texas Vexatious Litigant Statutes, i.e. Plaintiff's filing of one (1) purportedly offending instrument, or Plaintiff filing a Notice of Appeal, or Plaintiff filing a constitutional challenge to a Texas statute.

133.   The First Amendment freedom to petition for redress of grievances expressly protects that conduct.

134.   Plaintiff has committed no crime and broken no law, yet he has less rights now to unfettered access the Texas Courts in a civil case than an incarcerated criminal.[78]

135.   Plaintiff has only exercised his First Amendment freedom to petition, as the First Amendment guarantees, as the Supreme Court interprets.

---

[78]***Bounds v. Smith***, 430 U.S. 817, (1977), ***Jackson v. Procunier***, 789 F.2d 307 (5th Cir. 1986).

136.    The Appellate Court's dismissal  of the appeal is fundamental error because it ignores the overriding outcome determinative material fact that the Appellate Court expressly granted  Extension of Time to File the Notice of Appeal in its 14 March 2019 Order,[79] which Order invoked and accepted that Court's Appellate jurisdiction, as a matter of law.

137.    The Texas Supreme Court also denied review of this error.

138.    The Appellate Court's dismissal ignores the inescapable fact that Plaintiff was not *pro se* in that Appeal, as the undersigned has established his appearance as attorney in the original Notice of Appeal,[80] as the acknowledgment and transmittal letters from the County Clerk to the 14th Courts' Clerk conclusively demonstrate.[81]

139.    The Appellate Court's dismissal ignores that the Appellate Court itself actually acknowledged the undersigned attorney of record's existence in every pleading, notice or motion filed in that cause.

140.    The Appellate Court's dismissal ignores the express statute that the Vexatious Litigant Statutes,[82] only apply to *pro se* litigations when in that Appeal, counsel has always represented Plaintiff since filing the Notice of Appeal.

141.    The Texas Vexatious Litigant Statutes as misapplied in Plaintiff's case directly and completely abridge cognate First Amendment Rights of expression, as well as, to petition through Court access.

---

[79](App.8).
[80](App.5)
[81](Apps.6,7,&8).
[82](App.1) Texas Civil Practice & Remedies Code§11.002(a)

142.   The Vexatious Litigant Statutes also abridge the Fourteenth Amendment guaranteed freedom that "*No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States*".

143.   The Texas Supreme Court's refusal to review constitutional challenges thirty-nine (39) times also abridges the Fourteenth Amendment prohibition that no state "*deny to any person within its jurisdiction the equal protection of the laws*".

144.   The right of unfettered Court access is the promise for the Rule of Law, without which court access there is no Rule of Law.

145.   The Vexatious Litigant Statutes create situational prior restraint on the exercise of core First Amendment freedoms and should be declared "presumptively unconstitutional" under both Texas and Federal law.[83] [84]

146.   The Supreme Court held in ***Citizens United v. FEC***[85] that prior restraint on the freedom of speech is facially unconstitutional and must be invalidated when demonstrated:

> "The regulatory scheme at issue may not be a prior restraint in the strict sense. … The restrictions thus function as the equivalent of a prior restraint, giving the FEC power analogous to the type of government practices that the First Amendment was drawn to prohibit. The ongoing chill on speech makes it necessary to invoke the earlier precedents that a statute that chills speech can and must be invalidated where its facial invalidity has been demonstrated.

147.   The Statutes create unlawful judicially sanctioned situations contrary to established constitutional principles constituting prior restraint of core freedoms.

---

[83]***Davenport v. Garcia***, 834 S.W.2d 4, 10 (Tex. 1992). (holding that a prior restraint of First Amendment freedoms is presumptively unconstitutional under the Texas Constitution.
[84]***Citizens United v. FEC,*** 558 U.S. 310, (US 2010).
[85]***Citizens United*** *supra*); ***Nebraska Press Ass'n v. Stuart****, 427 U.S. 539, 563-64, (1976),

148.   Such is completely repugnant to freedoms guaranteed under the First and Fourteenth Amendments.

149.   Vexatious Litigant Statutory misapplication does nothing to protect fundamental rights, but rather extinguishes those rights.

150.   When the Texas Supreme Court sits silently, thirty-nine (39) times, such deportment demonstrates a pattern of repeatedly ignoring constitutional privileges and immunities, denies equal protection of the law and is the equivalent of denying Plaintiff and 330 other United States citizens an opportunity to be heard.[86]

151.   This is state sponsored judicial denial of due process of law prohibited by the Fourteenth Amendment.

152.   Further, the Texas Supreme Court's refusal to review this constitutional challenge has by acquiescence allowed Texas Courts to "brand" 330 United States citizens a "*vexatious litigant*" disfranchising their state and federal protected freedoms.

153.   This is state action totally nullifying First Amendment freedoms to speak, and petition, and constitutes unconstitutional state discrimination against a United States citizen prohibited by the Fourteenth Amendment.

---

[86]***Logan v. Zimmerman Brush Co.***, 455 U.S. 422, 428, (1982):   This **"requires that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case."**; concluding that " upon their claimed rights **restriction on litigants' use of established adjudicatory procedures denies due process when such restriction is "the equivalent of denying them an opportunity to be heard** "...A cause of action is a species of property protected by the due process clause of the 14th Amendment. ***Logan***, 455 U.S. at 428. (Emphasis Added.)

41

## History of the Right to Petition and for unfettered Access to Courts:
## Peaceful Dispute Resolution

154.    In the Western World from the 1215 *Magna Carta* to the 1776 Declaration of Independence to the 1789 First Amendment's core, the unfettered right to petition and access the courts has been a fundamental human right.

155.    The objective historical literature repeatedly identifies as the essential root of the Rule of Law the unfettered access to erected tribunals, now our Courts, for the peaceful, logical and reasonable resolution of member disputes and claims.[87]

156.    The 1215 *Magna Carta*, became the original source for British constitutionalism which represented then and now a social commitment to the Rule of Law, as a promise that even the King was not above the law.[88]

157.    Those who wrote our constitutions, both federal and state, were aware of the jurisprudential concepts, and indeed the language of *Magna Carta* and the Common Law.[89]

158.    The English in the course of several civil wars continued to define their natural law Right to Petition and for unfettered access to the Courts.

The 1689 English Bill of Rights provided:

**"That it is the right of the subjects to petition the king, and all commitments and prosecutions for such petitioning are illega**l." (Emphasis Added.)

159.    Thus the 1689 English Bill of Rights explicitly ordained the unfettered right to access the

---

[87] "The Founders and the Classics", Carl J. Richard, Harvard University Press, 1994; and, "*De Res Publica and De Legibus*", Marcus Tullius Cicero, 54, Loeb Classical Library 1928, trans Clinton W. Keyes, 1928.
[88] "The Roots of the Bill of Rights" Richard Schwartz, Chelsea House Publishers, 1980.
[89] *Id*.

Courts.[90]

160.    For the United States Constitution's drafters, no right was as fundamental to a free society as the unfettered access to the legal system, i.e., to be the beneficiary of a Rule of Law that protects one's rights against the most powerful.

161.    If the Court system is inaccessible, all other natural rights are unable to exist or have meaning.

162.    If the Court system fails to provide a fair and just hearing, as well as result, there is absolutely no Rule of Law.

163.    Thirty-nine of our state constitutions, including the Texas Constitution, contain some form of the following language:[91]

> "All courts shall be open; every person for injury done to his goods, lands, or person shall have remedy by due process or course of law; and right and justice shall be administered without self denial or delay."

164.    These remedy clauses are directly traceable to **_Magna Carta_**.

165.    In 1776, the Declaration of Independence cited King George's perceived failure to redress the grievances listed in colonial petitions, such as the 1775 Olive Branch Petition, as a justification to declare independence:

> "…In every stage of these Oppressions We have Petitioned for Redress in the most humble terms: Our repeated Petitions have been answered only by repeated injury. A Prince, whose character is thus marked by every act which may define a Tyrant, is unfit to be the ruler of a free people.[92]

166.    In reviewing constitutional law, from the earliest days of this Republic, the values and

---

[90] _Id._

[91] **_Id._**

[92] Quote from the _Declaration of Independence._

principles of access to justice are present.  Early precedent consistently defines the principles of access to justice as fundamental, although headnote description often defines access to the Courts as "*due process of law*", sometimes classifying it as a "*privilege and immunity*" or terming its denial as a "*violation of equal protection of the law*".

167.    These are the principles that the Framers incorporated into the First Amendment freedom to petition.

**The First Amendment Freedom to Petition**

168.    The First Amendment freedom to petition as the Supreme Court interprets is the supreme law of the land and so binds all Texas Courts under the Supremacy Clause.[93] [94]

169.    The Supremacy Clause states: "***This Constitution . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any state to the Contrary notwithstanding***."[95]

170.    There are no Supreme Court cases permitting restriction of the First Amendment freedom to petition.

171.    In no less than eight (8) civil cases over the last hundred and twelve (112) years the Supreme Court has repeatedly protected and enforced the core First Amendment freedom to petition and access the Courts.

---

[93] *Armstrong, v. Exceptional Child Center, Inc., Et Al,* 135 S.Ct. 1378, (2015).
[94] *DirectTV, Inc., v. Amy Imburgia* 136 S.Ct. 463, (2015).
[95] U.S. Const., Art.VI

172.    The cases of **Chambers v. Baltimore**[96]**, Thomas v. Collins,**[97] **Mine Workers v. Illinois Bar Assn,**[98] **California Motor Transport v. Trucking Unlimited,**[99]  **Bill Johnson's Restaurants, Inc. v. NLRB,**[100] **McDonald v. Smith**[101]**, BE&K Construction Company v. NLRB,**[102] and **Borough of Duryea, Pennsylvania v. Guarnieri,**[103] define the history of the Supreme Court's interpretation of the petition clause and are discussed below, along with relevant 5th Circuit cases in chronological order.

173.    The Supreme Court in 1907 said in **Chambers v. Baltimore**[104]**:**

"In the decision of the merits of the case there are some fundamental principles which are of controlling effect. ***The right to sue and defend in the courts is the alternative of force. In an organized society, it is the right conservative of all other rights, and lies at the foundation of orderly government. It is one of the highest and most essential privileges of citizenship,*** and must be allowed by each state to the citizens of all other states to the precise extent that it is allowed to its own citizens. Equality of treatment in this respect is not left to depend upon comity between the states, but is granted and protected by the federal Constitution."

174.    In 1945 in **Thomas v. Collins**[105]**:**

"The case confronts us again with the duty our system places on the Supreme Court to say where the individual's freedom ends and the State's power begins. Choice on that border, now, as always, delicate, is perhaps more so where the usual presumption supporting legislation is balanced by the preferred place given in our scheme to the great, the indispensable, democratic freedoms secured by the First Amendment.[106] That priority gives these liberties a sanctity and a sanction not permitting dubious intrusions. And it is the

---

[96]**Chambers v. Baltimore and Ohio Railroad Company** 207 U.S. 142, (1907).
[97]**Thomas v. Collins**, supra;
[98]**Mine Workers v. Illinois Bar Assn.,** 389 U.S. 217, (US 1967).
[99]**California Motor Transport v. Trucking Unlimited,** 404 U.S. 508 (1972).
[100]**Bill Johnson's Restaurants, Inc. v. NLRB,** 461 U.S. 731, (1983).
[101]**McDonald v. Smith** 472 U.S. 479, (1985)
[102] **BE&K Construction Company v. NLRB,** 536 U.S. 516, (2002).
[103]**Borough of Duryea, Pennsylvania V. Guarnieri,** 564 U.S. 379, (2011).
[104]**Chambers v. Baltimore** supra.
[105]**Thomas v. Collins**, supra;
[106]**Schneider v. State**,308 U.S.147;**Cantwell v. Connecticut**, 310 U.S. 296;**Prince v. Massachusetts**,321 U.S. 158.

character of the right, not of the limitation, which determines what standard governs the choice.[107] **For these reasons, any attempt to restrict those liberties must be justified by clear public interest, threatened not doubtfully or remotely, but by clear and present danger.** The rational connection between the remedy provided and the evil to be curbed, which, in other contexts, might support legislation against attack on due process grounds, will not suffice. These rights rest on firmer foundation. Accordingly, whatever occasion would restrain orderly discussion and persuasion, at appropriate time and place, must have clear support in public danger, actual or impending. Only the gravest abuses, endangering paramount interests, give occasion for permissible limitation. It is therefore in our tradition to allow the widest room for discussion, the narrowest range for its restriction, particularly when this right is exercised in conjunction with peaceable assembly. **It was not by accident or coincidence that the rights to freedom in speech and press were coupled in a single guaranty with the rights of the people peaceably to assemble and to petition for redress of grievances. All these, though not identical, are inseparable. They are cognate rights,[108] and therefore are united in the First Article's assurance.**"

175.  In 1967 in ***Mine Workers v. Illinois Bar Assn.***[109]*:*

"We start with the premise that the rights to assemble peaceably and to petition for a redress of grievances are among the most precious of the liberties safeguarded by the Bill of Rights. These rights, moreover, are intimately connected, both in origin and in purpose, with the other First Amendment rights of free speech and free press. "All these, though not identical, are inseparable."[110] **The First Amendment would, however, be a hollow promise if it left government free to destroy or erode its guarantees by indirect restraints so long as no law is passed that prohibits free speech, press, petition, or assembly as such. We have therefore repeatedly held that laws which actually affect the exercise of these vital rights cannot be sustained merely because they were enacted for the purpose of dealing with some evil within the State's legislative competence, or even because the laws do, in fact, provide a helpful means of dealing with such an evil.**[111]. . . Thus, in *Button, supra,* we dealt with a plan under which the NAACP not only advised prospective litigants to seek the assistance of particular attorneys but in many instances actually paid the attorneys itself. We held the dangers of baseless litigation and conflicting interests between the association and individual litigants far too speculative to justify the broad remedy invoked by the State, a remedy that would have seriously crippled the efforts of the NAACP to vindicate the rights of its members in court. . . Great secular causes, with small ones, are guarded. The grievances for redress of which the right of petition was insured, and with it the

---

[107] *Compare United States v. Carolene Products Co*., 304 U.S. 144, 152-153.
[108]*De Jones v. Oregon*, 299 U.S. 353, 364
[109]*Mine Workers* supra.
[110]*Thomas v. Collins*, supra. See *De Jones v. Oregon*, 299 U.S. 353, 364 (1937).
[111]Schneider v. State, 308 U.S. 147 (1939); Cantwell v. Connecticut, 310 U.S. 296 (1940).

right of assembly, are not solely religious or political ones. And the rights of free speech and a free press are not confined to any field of human interest."

176.  In 1972 in **California Motor Transport**[112] the Supreme Court clarified that "***The right of petition is one of the freedoms protected by the Bill of Rights ... The right of access to the courts is indeed but one aspect of the right of petition.***"[113]

177.  In 1983 in **Ryland v. Shapiro[114]**  the 5th Circuit recognized that:

> "The Substantive Right of Access to Courts: **The right of access to the courts is basic to our system of government, and it is well established today that it is one of the fundamental rights protected by the Constitution**. . .. 'It is by now well established that access to the courts is protected by the First Amendment right to petition for redress of grievances." . . . A number of other courts have also recognized that this right of access is encompassed by the first amendment right to petition. . .. A third constitutional basis for the right of access to the courts is found in the due process clause. . .. **Interference with the right of access to the courts gives rise to a claim for relief under section 1983**. . .. **In conclusion, it is clear that, under our Constitution, the right of access to the courts is guaranteed and protected from unlawful interference and deprivations by the state, and only compelling state interests will justify such intrusions**."

178.  In 1983 in **Bill Johnson's Restaurants, Inc. v. NLRB,[115]** the Supreme Court said that the First Amendment protected a citizen's right to file an unmeritorious lawsuit:

> "There are weighty countervailing considerations, however, that militate against allowing the Board to condemn the filing of a suit as an unfair labor practice and to enjoin its prosecution. In *California Motor Transport Co. v. Trucking Unlimited,*[116] we recognized that the right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances. Accordingly, we construed the antitrust laws as not prohibiting the filing of a lawsuit, regardless of the plaintiff's anticompetitive intent or purpose in doing so, unless the suit was a 'mere sham' filed for harassment purposes.[117] We should be sensitive to these First Amendment values in construing the NLRA in the present context. As the Board itself

---

[112]**California Motor Transport** *supra*.
[113]**Johnson v. Avery**, 393 U.S. 483, 485; ***Ex parte Hull***, 312 U.S. 546, 549.
[114]**Ryland v. Shapiro**  708 F.2d 967, 971 (5th Cir. 1983).
[115]**Bill Johnson's Restaurants, Inc. v. NLRB,** 461 U.S. 731, 741 (1983).
[116]**California Motor Transport** *supra.*
[117]**Id.** at 511, 92 S.Ct., at 612.

has recognized, 'going to a judicial body for redress of alleged wrongs ... stands apart from other forms of action directed at the alleged wrongdoer. The right of access to a court is too important to be called an unfair labor practice solely on the ground that what is sought in court is to enjoin employees from exercising a protected right. In *Linn, supra,* we held that an employer can properly recover damages in a tort action arising out of a labor dispute if it can prove malice and actual injury. If the Board is allowed to enjoin the prosecution of a well-grounded state lawsuit, it necessarily follows that any state plaintiff subject to such an injunction will be totally deprived of a remedy for an actual injury, since the 'Board can award no damages, impose no penalty, or give any other relief' to the plaintiff. . . . Considering the First Amendment right of access to the courts and the State interests identified in cases such as *Linn* and *Farmer,* however, we conclude that the Board's interpretation of the Act is untenable. The filing and prosecution of a well-founded lawsuit may not be enjoined as an unfair labor practice, even if it would not have been commenced but for the plaintiff's desire to retaliate against the defendant for exercising rights protected by the Act."

179.    And again in 1985 in ***McDonald v. Smith***[118]***:***

"The First Amendment guarantees "**the right of the people. . . to petition the Government for a redress of grievances." The right to petition is cut from the same cloth as the other guarantees of that Amendment, and is an assurance of a particular freedom of expression**. In *United States v. Cruikshank*, 92 U.S. 542 (1876), the Court declared that this right is implicit in "[t]he very idea of government, republican in form." *Id.* at 552. . . . To accept Plaintiff's claim of absolute immunity would elevate the Petition Clause to special First Amendment status. **The Petition Clause, however, was inspired by the same ideals of liberty and democracy that gave us the freedoms to speak, publish, and assemble.[119] These First Amendment rights are inseparable**."[120]

180.    In 1986 in ***Jackson v. Procunier***[121] the 5th Circuit expressly recognized that the denial of a

litigant's freedom of access to the Courts to pursue a civil appeal, (as the Administrative Order[122] did

in this case) constitutes the deprivation of a substantive constitutional freedom, which the First

---

[118]***McDonald v. Smith*** 472 U.S. 479, 482 (1985)
[119]*See Mine Workers v. Illinois Bar Assn.*, 389 U.S. 217, 222 (1967).
[120]*Thomas v. Collins*, 323 U.S. 516, 530 (1945).
[121]***Jackson v. Procunier***, 789 F.2d 307, 310 (5th Cir. 1986)
[122](App.4).

Amendment protects, as well as, constitutes a potential deprivation of substantive and procedural due process:

> "A substantive right of access to the courts has long been recognized. *In Ryland v. Shapiro,* we characterized that right as 'one of the fundamental rights protected by the Constitution.' *In Wilson v. Thompson,* we stated, 'it is by now well established that access to the courts is protected by the First Amendment right to petition for redress of grievances.' That right has also been found in the fourteenth amendment guarantees of procedural and substantive due process. **Consequently, interference with access to the courts may constitute the deprivation of a substantive constitutional right, as well as a potential deprivation of property without due process, and may give rise to a claim for relief under Sec. 1983. Any deliberate impediment to access, even a delay of access, may constitute a constitutional deprivation.** . . . Recognition of the constitutional right of access to the courts, however, long precedes *Bounds, and* has from its inception been applied to civil as well as constitutional claims. . . .**If Jackson has alleged a deliberate denial of his right of access to the courts to pursue his civil appeal, he has alleged the deprivation of a substantive constitutional right found in the first amendment, as well as a potential deprivation of substantive and procedural due process.**"

181.    In 1989 in **Crowder v. Sinyard,**[123] the 5th Circuit declared "As we have pointed out, however, our cases also stand for the proposition that [a] mere formal right of access to the courts does not pass constitutional muster. Courts have required that the access be *'adequate, effective, and meaningful.'*"

182.    In 2002 in **BE&K Construction Company v. NLRB,**[124] the Supreme Court held that the First Amendment freedom to petition protected a citizen's right to file a baseless lawsuit:

> "The First Amendment provides, in relevant part, that 'Congress shall make no law . . . abridging . . . the right of the people . . . to petition the Government for a redress of grievances.' We have recognized this right to petition as one of 'the most precious of the liberties safeguarded by the Bill of Rights,'[125] and have explained that the right is implied by '[t]he very idea of a government, republican in form.'[126] . . . We said in *Bill Johnson's* that the Board

---

[123]**Crowder v. Sinyard,** 884 F.2d 804, 811 (5th Cir. 1989).
[124]**BE&K Construction Company v NLRB,** supra.
[125]**Mine Workers** supra.
[126]**United States v. Cruikshank,** 92 U.S. 542, 552 (US 1876).

could enjoin baseless retaliatory suits because they fell outside of the First Amendment and thus were analogous to 'false statements.'[127] **We concluded that '[j]ust as false statements are not immunized by the First Amendment right to freedom of speech, baseless litigation is not immunized by the First Amendment right to petition.'[128] While this analogy is helpful, it does not suggest that the class of baseless litigation is *completely* unprotected: at most, it indicates such litigation should be unprotected 'just as' false statements are. And while false statements may be unprotected for their own sake, '[t]he First Amendment requires that we protect some falsehood in order to protect speech that matters.'[129]** An example of such 'breathing space' protection is the requirement that a public official seeking compensatory damages for defamation prove by clear and convincing evidence that false statements were made with knowledge or reckless disregard of their falsity.[130] . . . It is at least consistent with these 'breathing space' principles that we have never held that the entire class of objectively baseless litigation may be enjoined or declared unlawful even though such suits may advance no First Amendment interests of their own. Instead, in cases like *Bill Johnson's* and *Professional Real Estate Investors*, our holdings limited regulation to suits that were both objectively baseless *and* subjectively motivated by an unlawful purpose. But we need not resolve whether objectively baseless litigation requires any 'breathing room' protection, for what is at issue here are suits that are not baseless in the first place. Instead, as an initial matter, we are dealing with the class of reasonably based but unsuccessful lawsuits. But whether this class of suits falls outside the scope of the First Amendment's Petition Clause at the least presents a difficult constitutional question, given the following considerations.

First, even though all the lawsuits in this class are unsuccessful, the class nevertheless includes a substantial proportion of all suits involving genuine grievances because the genuineness of a grievance does not turn on whether it succeeds. Indeed, this is reflected by our prior cases which have protected petitioning whenever it is genuine, not simply when it triumphs.[131] Nor does the text of the First Amendment speak in terms of successful petitioning—it speaks simply of 'the right of the people . . . to petition the Government for a redress of grievances.'  Second, even unsuccessful but reasonably based suits advance some First Amendment interests. Like successful suits, unsuccessful suits allow the 'public airing of disputed facts,'[132] and raise matters of public concern. They also promote the

---

[127]***Bill Johnson's,*** *supra,* and, ***Mine Workers*** *supra.*

[128]***Ibid.*** (citations omitted).

[129]***Gertz v. Robert Welch, Inc.,*** 418 U.S. 323, 341 (1974) (emphasis added); ***id.,*** at 342 (noting the need to protect some falsehoods to ensure that 'the freedoms of speech and press [receive] that 'breathing space' essential to their fruitful exercise' (quoting ***NAACP v. Button,*** 371 U.S. 415, 433 (1963))).

[130]See ***New York Times Co. v. Sullivan,*** 376 U.S. 254, 279– 280, 285 (1964).

[131]See, *e.g.*, ***Professional Real Estate Investors***, 508 U.S., at 58–61 (protecting suits from antitrust liability whenever they are objectively or subjectively genuine); ***Pennington***, 381 U.S., at 670 (shielding from antitrust immunity any "concerted effort to influence public officials").

[132]***Bill Johnson's, supra,*** at 743.

evolution of the law by supporting the development of legal theories that may not gain acceptance the first time around. Moreover, the ability to lawfully prosecute even unsuccessful suits adds legitimacy to the court system as a designated alternative to force.[133] Finally, while baseless suits can be seen as analogous to false statements, that analogy does not directly extend to suits that are unsuccessful but reasonably based. For even if a suit could be seen as a kind of provable statement, the fact that it loses does not mean it is false. At most it means the plaintiff did not meet its burden of proving its truth. That does not mean the defendant has proved—or could prove—the contrary**."**

183. And in 2011 in ***Borough of Duryea, Pennsylvania v. Guarnieri***,[134]:

"**The Supreme Court has said that the right to speak and the right to petition are cognate rights.**". . ."**The Supreme Court's precedents confirm that the Petition Clause protects the <u>right of individuals to appeal to courts</u> and other forums established by the government for resolution of legal disputes."** . . . **"The right of access to courts for redress of wrongs is an aspect of the First Amendment right to petition the government**."[135]

## The Vexatious Litigant Statutes are Unconstitutional

184. This Court must answer the constitutional question: "*how can the filing of one offending civil pleading lead to the forfeiture of guaranteed First Amendment freedoms*"?

185. The simple answer is: "*it cannot. This is America where the First Amendment of the United States Constitution expressly protects such petitioning conduct*".

186. The Texas Vexatious Litigant statutes are unconstitutional because they chill core freedoms and are thus repugnant to the First and Fourteenth Amendments.

187. They also violate express privileges and immunities guaranteed under the Texas Constitution

---

[133]See Andrews, A Right of Access to Court Under the Petition Clause of the First Amendment: Defining the Right, 60 Ohio St. L. J. 557, 656 (1999) (noting the potential for avoiding violence by the filing of unsuccessful claims).
[134]***Borough of Duryea, supra.***
[135]***Sure-Tan, Inc. v. NLRB***, 467 U.S. 883, 896-897, (1984); see also ***BE& K Constr. Co. v. NLRB***, 536 U.S. 516, 525, (2002); ***Bill Johnson's Restaurants, Inc. v. NLRB,*** 461 U.S. 731, 741, (1983); ***California Motor Transport Co. v. Trucking Unlimited***, 404 U.S. 508, 513, (1972).

Art. I, §§ 13, 19, 27, and 29, discussed below.

188.   The Supreme Court has declared the First Amendment core freedom to petition to be a cognate right inseparable from the freedom of speech, yet the State of Texas—through enactment of the statutes and judicial decisions—have declared forfeited these federally protected constitutional rights.[136]

189.   All of the Texas Courts of Appeals referenced herein that have addressed the constitutionality of the statutes have determined—with virtually no reasoning—declaring that the statutes are not unconstitutional on their face; that the statutes do not authorize courts to act arbitrarily; that it only permits courts to restrict a citizens' access to the courts after making specific findings of vexatiousness; and that the restrictions are not unreasonable or arbitrary **_when balanced against the purpose and basis of the statute_**.[137]

190.      In finding the statutes constitutional, the Texas Appellate Courts have utilized an

---

[136]***Leonard v. Abbott***, 171 S.W.3d 451, 456-58 (Tex. App. Dist. 3—Austin 2005, pet. denied) (holding that the statute is not unconstitutional because **it strikes a balance between Texans' right of access** to their courts and the public interest in protecting defendants from those who abuse the Texas court system by systematically filing lawsuits with little or no merit); ***Cooper v. McNulty***, 2016 Tex. App. LEXIS 11333, *11, 2016 WL 6093999 (Tex. App. Dist. 5—Dallas 2016, no pet.); **Retzlaff v. GoAmerica Communs. Corp.,** 356 S.W.3d 689, 702 (Tex. App. Dist. 8—El Paso 2011, no pet.); **Sweed v. Nye,** 319 S.W.3d 791, 793 (Tex. App. Dist.8—El Paso 2010, pet. denied); ***Dolenz v. Boundy***, No. 05-08-01052-CV, 2009 LEXIS 9196, *9, 2009 WL 4283106 (Tex. App. Dist. 5—Dallas 2009, no pet.); ***In re Potts***, 357 S.W.3d 766, 769 (Tex. App. Dist. 14—Houston 2011, orig. proceeding); ***Johnson v. Sloan***, 320 S.W.3d 388, 389-90 (Tex. App. Dist. 8 —El Paso 2010, pet. denied); ***Clifton v. Walters***, 308 S.W.3d 94, 101-02 (Tex. App. Dist. 2—Fort Worth 2010, pet. denied); ***In re Johnson***, No. 07-07-0245-CV, 2008 Tex. App. LEXIS 5110, 2008 WL 2681314, at *2 (Tex. App. Dist. 7—Amarillo 2008) (orig. proceeding).

[137]The Texas appellate courts, which recite nearly identical and conclusory reasoning as to why the statute is *not* unconstitutional, do not explain, for example, how the criteria of five losses in seven years satisfies the prior restraint on a citizen's access to the Courts.  Civ. Prac. & Rem. Code 11.054.  Nor do the Texas Courts of Appeal attempt to reconcile any other criterion with a *pro se* litigant's right to petition and the open courts' provisions.  ***Leonard v. Abbott***, 171 S.W.3d at 457 ("To establish an open courts violation, it must be shown that the litigant has a cognizable common law cause of action being restricted by a statute, and that the restriction is unreasonable or arbitrary when balanced against the purpose of the statute.")  While the Third Court of Appeals recites a proper standard in *Leonard*, it does not fulfill its requirement with articulated reasoning.

unconstitutional substantive constitutional analysis of these statutes by implementing a "**weighing**" or "**balancing**" analysis in order to conclude they meet Texas Constitutional muster.

191.    The Supreme Court emphatically rejected this "**startling and dangerous**" proposition in **Brown v. Entertainment Merchants Association**[138]   declaring the First Amendment and the freedoms it guarantees are not subject to a weighing or balancing analysis:

> "The Government argued in *Stevens* that lack of a historical warrant did not matter; that it could create new categories of unprotected speech by applying a "**simple balancing test**" **that weighs the value of a particular category of speech against its social costs and then punishes that category of speech if it fails the test**. *Stevens*, 559 U.S. at 470, <u>We emphatically rejected that "startling and dangerous" proposition</u>. *Ibid.* " Maybe there are some categories of speech that have been historically unprotected, but have not yet been specifically identified or discussed as such in our case law." *Id.*, at 472, But without persuasive evidence that a novel restriction on content is part of a long (if heretofore unrecognized) tradition of proscription, *a legislature may not revise the "judgment [of] the American people," embodied in the First Amendment," that the benefits of its restrictions on the Government outweigh the costs.*" *Id.*, at 470.

192.    Moreover, none of the Texas Courts of Appeals' collective and nearly identical reasoning address the First Amendment constitutional mandate that "*Congress shall make no law . . . abridging. . . the right of the people . . . to petition the Government for a redress of grievances*" or the Fourteenth Amendment constitutional mandate that "*No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States*".

193.    Nor do the Texas Courts address the specific freedoms to petition guaranteed under the Texas Constitution Art. I, § 27:

> "***The <u>citizens shall have the right</u>, in a peaceable manner***, to assemble together for their common good; ***and apply to those invested with the powers of government for redress of grievances*** or other purposes, ***by petition***, address or remonstrance."

---

[138]***Brown v. Entertainment Merchants Association,*** 564 U.S. 786, 792 (2011).

194.    The Vexatious Litigant Statutes clearly violate the Texas Constitutional guarantees to open courts, with remedy by due course of law. Tex. Const. Art. 1 § 13:

> "Excessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishment inflicted. ***All courts shall be open, and <u>every person</u> for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law.***"

195.    The statutes disfranchise Plaintiff and other U.S. citizens of privileges or immunities expressly prohibited under Tex. Const. Art 1. § 19:

> "***No citizen of this State shall be deprived of*** life, liberty, property, ***privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land."***

196.    In this case the due course of the law of the land is the First and Fourteenth Amendments to the United States Constitution and the Texas Constitution Article 1. §§ 13,19, 27 and 29.

197.    The Vexatious Litigant Statutes arbitrarily limit the freedom to petition to five (5) unsuccessful lawsuits within seven (7) years, then allows for the imposition of a permanent injunction prohibiting *pro se* litigation, requiring pre-filing governmental approval to access the Courts, punishable by contempt.[139]

198.    The statutes also provide that if the plaintiff relitigates or attempts to relitigate, *pro se*, any of the issues of fact or law, as allegedly happened in this case, he or she is subject to being declared a vexatious litigant for filing one pleading, thereby forfeiting all constitutional rights to petition *pro se*.

199.    The statutes do not prohibit the same behavior if represented by counsel.

---

[139](App.1).

200.    Hence, the statutes permit what should be a collateral estoppel defensive argument to be transformed into a judicial declaration forfeiting all First Amendment rights to petition and access Texas courts.

201.    These statutes chill if not freeze core freedoms guaranteed by the United States and Texas Constitutions—because they impose multiple onerous limitations on a citizen's freedom to petition—which is not found in either constitution.[140]

202.    It might be helpful to hypothetically apply the inseparable cognate rights of speech and petition to a fictional Texas statute that forbids prospective speech after a trial court finds that a citizen has made five (5) slanderous public statements within seven (7) years, and in so finding, enjoins the citizen from speaking, without first getting government approval and posting security—and, if the citizen speaks without first getting government approval and posting security, he or she is subject to contempt.

203.    Any such statute, which is arguably 100% analogous to the Texas Vexatious Litigant Statutes, would be struck down at its first instance as a prior restraint on the freedom of speech.

204.    Also indicative of the statute's unconstitutionality, is that neither the Texas Courts of Appeals nor the statute itself identifies any public interest threatened, or any clear and present danger posed by allowing citizens to appear *pro se* in civil matters.

205.    The statute is unconstitutional precisely for this reason.

---

[140]*See* Tex. Const. art. I, § 29 (rights shall remain inviolate).

206.   The Supreme Court has required that any attempt to restrict First Amendment liberties must be justified by clear public interest, threatened by clear and present danger.

207.   The statute is silent on these elements, and the Texas Courts of Appeals cases upholding its constitutionality are uniformly silent on these constitutional requirements.

208.   Indeed, all Texas Courts construing the statute and finding the provisions valid, do not identify any clear and present danger, nor do they address the vexatious litigant statute's chilling effect on a citizen's First Amendment freedom to access the courts *pro se*.

209.   Further, the bare-bones reasoning of the Texas Courts of Appeals is arbitrary and capricious and violates Plaintiff's Fourteenth Amendment right to equal protection of First Amendment privileges and immunities.

210.   The freedom to represent oneself, as a *pro se* litigant in a civil case, is a codified legal right in federal courts.[141]

211.   Texas follows with Texas Rule of Civil Procedure 7, which provides: "Any party to a suit may appear and prosecute or defend his rights therein, either in person or by an attorney of the court."

212.   These fundamental rights are not protected by the statute—but instead, are extinguished by the statute.

213.   The statute sets out extremely onerous conditions for exercising the freedom to petition, which in many cases, completely terminates a citizens' right to access Texas courts.

---

[141] 28 U.S.C §1654 (2012) ("In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein.").

214.    The State of Texas may not curtail only *pro se* litigation, especially arbitrarily, as it has with the vexatious litigant statutes.

215.    The statutes do not accommodate the foregoing constitutional protections, and none of the Texas cases finding it valid, expound on the "danger" of *pro se* litigation or why that "danger" should be restricted.

216.    Similarly, no "rational connection between the remedy provided and the evil to be curbed" is explained in any of the court of appeals' decisions or within the statute.[142]

217.    Clearly the statute is unconstitutional, and this Court should so declare.

## CONCLUSION

218.    The Texas Vexatious Litigant Statutes have been weaponized to exclude Plaintiff from any access to the Rule of Law and are thus repugnant to core State and Federal constitutional freedoms.

219.    The glue that holds our Country together is the Constitution of the United States and equal justice under law.

220.    "Equal Justice Under Law" is not just a saying, it is the supreme law of the land and the bedrock of the American legal system.

221.    This case presents *un-equal justice* under law that these Courts must now remedy.

220.    If the Texas Supreme Court denies review of constitutional challenges to these statutes thirty-nine (39) times, what American can say the Texas Supreme Court fulfilled its sworn duty to "*to*

---

[142]*See Mine Workers*, 389 U.S. at 222 (statutory limitations on First Amendment rights "must have clear support in public danger, actual or impending" and "only the gravest abuses, endangering paramount interests, give occasion for permissible limitation").

*preserve, protect and defend the Constitution of the United States*?"

221.   This case represents a "*conspiracy of silence*" within the Texas Courts, to fetter precious constitutional freedoms that must end.

222.   If the State of Texas and its Courts can declare forfeit a United States citizens First Amendment protections, as has been done in the cited Texas Probate Court cases, all citizens protected constitutional freedoms are in jeopardy.

### Prayer

223.   WHEREFORE PREMISES CONSIDERED, Plaintiff respectfully prays that upon service of process and summons that these Courts require each Defendant to appear and answer; that these Honorable Courts enforce First Amendment freedoms and declare void and unconstitutional the Vexatious Litigant Statutes, as well as, enter a permanent injunction barring the State of Texas and the Probate Courts' enforcement, render judgment declaring void the 30 January 2018 vexatious litigant Order and the 31 January 2019 Administrative Order, the two (2) Orders of 24 April 2019, the 14th Appellate Court's 15 January 2019 Memorandum affirming the vexatious litigant Order, the judgment of 31 May 2019 awarding attorney's fees, as well as, award Plaintiff all reasonable and necessary attorney's fees the law might allow, incurred challenging the void state court orders, or Plaintiff might incur on appeal, and render such other further Orders for any other relief or damages to which Plaintiff might be entitled in equity and at law including that this Court enter judgment for all actual and punitive damages Plaintiff has sustained against defendants Nunu and Risk, as permitted by law, individually or joint and severally consistent with law and justice; that this Court award attorneys' fees and costs as  law might allow; that this Court enter such equitable decrees as are

appropriate; and, that this Court grant Plaintiff whatever other relief to which he might be entitled in

equity or at law, or the nature of this cause might require, as the Courts might deem meet, just and

proper.

Plaintiff prays for general relief.

Plaintiff demands trial by jury (where allowable and appropriate).

**Respectfully submitted,**
*/S/  Donald T. Cheatham*
**Donald T. Cheatham**
**Texas Bar Number 24029925**
**SDTX: 32456**
**9801 Westheimer Road,  Suite 600**
**Houston, Texas 77042**
**(713) 337-0155 Telephone**
**(713)400-7696 Telecopier**
**email: cheathamlaw@aol.com**

### Declaration of Paul E. Nunu

My name is Paul E. Nunu, and I am 66 years old and the Plaintiff in this cause. I am an attorney licensed by the State of Texas since 1982 with SBN 15141850.  My business address is 3256 Burke Rd, Pasadena, Texas 77504.  I swear under penalty of perjury that I have read the forgoing and I have personal knowledge of the facts recited herein and they are all true and correct. The documents attached hereto are true and correct copies of public records and or documents filed in my Mother's probate case.

/s/ Paul E. Nunu          Date:  14 January 2021

### Certificate of Service

The undersigned does hereby certify that he caused service of process upon record counsel for the Defendants through the Clerk's CM/ECF system and all other parties individually pursuant to Federal Rule of Civil Procedure 4 and 5 on the effective date of this filing.

*/S/  Donald T. Cheatham*
**Donald T. Cheatham**
